DAVIS, APPELLEE, *v.*
DAVIS, APPELLANT.

(Nos. 55251 and 54444—Decided October 24, 1988.)

*Direnfeld, Greene & Blackburn Co., L.P.A.,* and *Bernard B. Direnfeld,* for appellee.
*Wuliger, Fadel & Beyer, William T. Wuliger* and *Steven D. Jones,* for appellant.

*Steven H. Slive,* guardian *ad litem.*

MARKUS, J. Nearly five years after the parties' divorce, the trial court terminated the father's visitation rights with his eight-year-old son and his child support obligations. The father and the mother both appeal. The father challenges the termination of visitation. The mother contests the termination of child support. We hold that the court lacked sufficient justification for either of those orders, so we reverse them and remand for further proceedings.

Both the father and the mother also complain that the court effectively denied their requests for attorney fees, and ordered them to compensate the child's guardian *ad litem.* Additionally, the mother disputes the court's requirement that she post security to stay the judgment for the guardian's fees pending this appeal. None of these contentions has merit.

I

The court's divorce decree granted the mother custody of the couple's only child with visitation for the father at "reasonable hours and intervals." It ordered him to pay the mother for the child's necessary medical expenses and $30 weekly as child support. Presumably because the mother earned as much as the father or more, the decree divided the marital property without ordering any sustenance alimony. The father received the marital residence, with an obligation to pay the mother $3,500 in $100 monthly installments.

Apparently both parties promptly began to violate the divorce decree. The father failed to make regular child support payments or any of the property installments. The mother failed to afford the child regular visitation with the father. Five months after the divorce, the court established a specific visitation schedule. Seven months thereafter the court concluded that the

mother had denied the child any visitation with the father since its last order. Consequently, it abated the father's support obligation until the mother afforded that visitation.

The court's referee later conducted hearings on the father's motion to hold the mother in contempt for refusing to permit visitation, and the mother's motion to reinstate child support. Approximately twenty months after their divorce, the parties agreed upon a judgment which supposedly resolved their differences. When they failed to comply with that judgment, the court subsequently vacated it.

Thereafter, the court's referee reopened hearings on prior and subsequent motions. The referee summarized the evidence and his findings in a thirty-three-page report, which he supplemented with another nine-page report and supporting exhibits. The court overruled the parties' objections to the referee's report and accepted his recommendations in its judgment.

In substance, each party denied any breach of his or her own obligations until the other breached the court's orders. Each party also claimed that the other retaliated by seeking further rights whenever he or she sought to enforce the court's orders.

When the parties first separated, the child was two years old. The father did not attempt to visit the child for approximately one year. He asserted that he acted in the child's best interests in light of the animosity between his former wife and himself. She claimed that he lacked interest in the child. The father sought visitation when the child was three years old. During the next three or four months, the child had several visits with the father. No further visitation occurred.

The father sought to show that the mother subtly discouraged the child from visiting him and conditioned the child to hate him. In fact, the child resisted some of the visits. The mother regularly dressed the child for his visits with the father in the same red jacket and shoes, which the child strongly disliked. On one occasion, the mother reportedly interrupted the child's successful visit with the father by coming to the home where the father took the child. A woman who worked in the same building as the mother testified that the mother told her she would never permit the child's visitation with the father. The mother denied that conversation.

The mother asserted that she never tried to prevent visitation. She sought to show that the father had no real affection for the child. He had not sent the child a birthday or Christmas present after the divorce. She also contended that the father neglected the child on some earlier visits and that later visits caused the child great emotional distress. Several witnesses described changes in the child's behavior when the father resumed visitation, which coincided with the time when the child began preschool classes.

There was no evidence that the father ever willfully injured the child. The child sometimes came home with his pants wet. On one occasion the father reportedly failed to administer the child's medication for an ear infection. On another occasion, the child burned his hand during a visit, by touching a hot radiator. Though the minor burn required some attention, it left no residual damage. The mother asserted, and the father denied, that several years before the divorce the father shot her pet dogs and endangered some strangers with a boat.

A trained social worker from the court's family conciliation service testified about her multiple interviews with each parent and the child. She saw them several times in the first two years after the divorce. She concluded

that the mother preferred no visitation for the child with the father. The father's efforts to visit the child had been largely unsuccessful. The father did not have a good relationship with the child, but the two interacted favorably during interviews. After the visitations ended, the child believed that his father was dead.

The social worker recommended that the child should visit with the father, initially under the supervision of a trained mental health professional. She expressed her expert opinion that those meetings should occur weekly in a neutral place.

Four years after the divorce, a psychiatrist for the court's conciliation service interviewed the parties and the child. By agreement, the psychiatrist's written report was admitted as an exhibit. The child was then age seven and a second grade student. He had no visitation with his father in the preceding three years.

The psychiatrist reported that the child recognized his father and called him by his nickname. The child "interacted warmly and spontaneously" with this father when they were together. Privately, the child told the psychiatrist that he did not want to visit his father because it was "boring." The mother "was a highly anxious woman" who expressed strong opposition to visitation, particularly if it is not supervised. The father "was a stern man" who described a "legal standoff" which denied him visitation but eliminated his need to support the child.

The referee concluded that further efforts to compel visitation would be futile or harmful. He found that the mother was determined to obstruct visitation, even though it created no danger to the child's physical, emotional, or moral welfare. He further found that the father lacked sufficient interest in visitation to participate regularly and consistently, even if the court coerced the mother's cooperation.

With regard to child support, the referee concluded that the child had no need for additional support in his present circumstances. The mother and child are tenants in the relatively affluent home of the mother's employer, where she also acts as a night housekeeper for her employer's children. During office hours, she is a legal secretary for the lawyer who represents her in this case. Additionally, the referee concluded that the mother's obstreperous interference with visitation justified the termination of child support.

At the referee's recommendation, the court's judgment (1) terminated all visitation orders, (2) terminated all support orders, (3) ordered each party to pay the other party $500 toward their respective attorney fees in connection with the disputed motions, and (4) ordered each party to pay one-half of the $7,400 fees for the child's guardian *ad litem* in these proceedings.

## II

The mother's first assigned error challenges the order nine months before her notice of appeal, in which the court vacated the parties' earlier agreed judgment. An order which vacates a prior final order is itself a final appealable order. *Bourque* v. *Bourque* (1986), 34 Ohio App. 3d 284, 286, 518 N.E. 2d 49, 51; *Solomon* v. *Welch* (Feb. 25, 1988), Cuyahoga App. No. 53463, unreported.

The mother's failure to appeal from that order within thirty days after its entry deprives this court of jurisdiction to consider her complaint about it. See App. R. 4(A); *Bosco* v. *Euclid* (1974), 38 Ohio App. 2d 40, 42-53, 67 O.O. 2d 209, 211, 311 N.E. 2d 870, 872. Hence, we overrule her first assigned error.

## III

In their remaining assignments of error for the principal appeals, the parties contest the more recent orders regarding visitation, child support, attorney fees, and guardian fees.

Ordinarily, child support and visitation are independent matters. Visitation provides the child a beneficial association with both parents. *Porter* v. *Porter* (1971), 25 Ohio St. 2d 123, 54 O.O. 2d 260, 267 N.E. 2d 299, paragraph three of the syllabus, and at 128, 54 O.O. 2d at 263, 267 N.E. 2d at 302. The court should enforce the child's right of visitation unless extraordinary circumstances preclude it. *Pettry* v. *Pettry* (1984), 20 Ohio App. 3d 350, 352, 20 OBR 454, 456, 486 N.E. 2d 213, 216.

Circumstances which create a significant risk of serious physical or emotional harm to the child may justify the denial of a child's natural right of visitation. *Pettry* v. *Pettry, supra; Smith* v. *Smith* (1980), 70 Ohio App. 2d 87, 90, 24 O.O. 3d 100, 103, 434 N.E. 2d 749, 752. Those circumstances may arise when the visiting parent is unfit by reason of (a) mental illness, (b) immoral behavior, (c) substance abuse, or (d) criminal behavior. See Baldwin's Ohio Domestic Relations Law (1987) 366-367, Section 350.06.

Neither the custodial parent's intrasigent recalcitrance nor the noncustodial parent's inconsistency will justify judicial indifference to the child's rights. The court cannot force the noncustodial parent to visit the child. However, the court should require compliance with all reasonable requests for such visits. When either parent's conduct risks the child's emotional welfare during visitation, the court can impose reasonable conditions to assist the process. Cf. *Roberts* v. *Roberts* (1985), 22 Ohio App. 3d 127, 22 OBR 328, 489 N.E. 2d 1067 (trial court abused its discretion in failing to order adequate safeguards for child's visitation with homosexual father); *Bodine* v. *Bodine* (1988), 38 Ohio App. 3d 173, 528 N.E. 2d 973 (same for father with violent history).

In this case, the court adopted the referee's factual findings, including the following:

"[T]he record is bereft of any credible evidence suggesting in any way that the [father's] visitation with the parties' minor child is at all damaging to the child, or that visitation by the [father] would in any way endanger the child physically, emotionally, or morally."

In that situation, the court should order the custodial parent to comply with reasonable visitation requests, under whatever conditions the court deems appropriate. This is part of the burden that a custodial parent bears in the child's best interests. The child may lose the benefit of such visits if the noncustodial parent fails to visit or fails to comply with the court's reasonable conditions.

Those conditions can seek to minimize either parent's unnecessary inconvenience, or the child's conflict with either parent. However, the court should rigorously use its many powers to discourage the custodial parent from interfering with such visitation. The custodial parent should be aware that those powers include civil or criminal contempt with fines or imprisonment. The court can even condition the contumacious custodial parent's release on the posting of security for the noncustodial parent's expense to enforce later compliance.

The father apparently misunderstands the court's power to abate support payments. The court can withhold such payments from a recalcitrant custodial parent to compel that parent's compliance with visitation. See R.C. 1309.05(B) (then in force, but

repealed effective October 5, 1987). However, the obligation to provide support does not depend upon the availability of visitation. In some circumstances, a noncustodial parent may have a duty to provide support but no privilege to visit the child.

In this case, the denial of support payments did not compel visitation compliance because the custodial parent did not depend on those relatively small amounts. The court should have used other or additional means to compel compliance. It should not eliminate support when the parties frustrate its efforts to encourage visitation. Child support serves to maintain the child according to the standard that would have prevailed if the parties had remained married. *Colizoli* v. *Colizoli* (1984), 15 Ohio St. 3d 333, 336, 15 OBR 458, 460, 474 N.E. 2d 280, 282. It also reminds the noncustodial parent of his responsibility for the child, even when the amounts do not materially improve the child's welfare. C.P. Sup. R. 75(B); cf. *Jarboe* v. *Jarboe* (Feb. 24, 1988), Summit App. No. 13266, unreported (child support should be required, regardless of the child's financial resources, unless the noncustodial parent can demonstrate an inability to pay).

While the child may have more favorable circumstances now than during the prior marriage, his right to support relates to the parties' current economic fortunes. The father's income permits him to provide some support, and the court should determine an appropriate amount.

We sustain the father's assigned error and the mother's second assigned error to the extent that they address visitation and child support.

## IV

The remaining issues in the principal cross-appeals concern the orders which (a) denied each party's request to have the adverse party pay attorney fees, and (b) required them to share the guardian's fees equally.

For visitation and child support issues, the trial court had discretion to order the losing party to pay some or all of the prevailing party's reasonable legal fees. *Rand* v. *Rand* (1985), 18 Ohio St. 3d 356, 359, 18 OBR 415, 418, 481 N.E. 2d 609, 611. Each party prevailed to some extent. The court found the father in contempt for failing to pay the property installments and the mother in contempt for failing to comply with the visitation order. It denied each party's request to modify prior orders. Each was partly responsible for the protracted hearings.

Since the parties contributed in part to their own difficulties, and since they each had modest means, the court reasonably restricted their obligation to pay their adversary's legal fees. It did not abuse its discretion by ordering each to pay $500 toward the adverse party's fees, even though that order effectively denied fees to both parties.

Likewise, the court had discretion to require either or both to compensate the child's guardian *ad litem* for his services. See Staff Note, Civ. R. 75(B)(2); *Bishop* v. *Bishop* (May 2, 1987), Cuyahoga App. No. 51731, unreported. Neither party challenges the reasonableness of the guardian's fees. Rather, they each argue that the other should pay those fees. The court did not abuse its discretion by ordering them to share that responsibility, in view of their relatively equal litigation success and economic status.

To the extent that the parties challenge the orders regarding their legal fees and the guardian's fees, we overrule their assigned errors.

## V

Finally, the mother's separate appeal contests the order for her stay pending appeal from the judgment for the guardian's fee. The court originally granted a stay unconditionally. It later

modified its order to condition the stay on a bond which would secure the payment of the guardian's judgment. The mother's two assigned errors for this appeal argue that the court lacked authority to require such a bond, particularly when its initial stay order omitted that requirement.

Our contemporaneous disposition of the principal appeal may well moot this separate appeal. The mother cannot reasonably complain about security for the guardian's judgment during her appeal from that judgment, when she lost that appeal. However, we respond to her contentions because the issues may well recur and continue to evade review. Cf. *State, ex rel. Plain Dealer Publishing Co.*, v. *Barnes* (1988), 38 Ohio St. 3d 165, 527 N.E. 2d 807, paragraph one of the syllabus.

Ordinarily, the trial court should condition a stay pending appeal from a civil judgment on appropriate security to pay the challenged judgment. Civ. R. 62(B); R.C. 2505.09. Contrary to the mother's claim, Civ. R. 75 (G) does not alter that result by providing: "* * * Rule 62(B) does not apply to custody, alimony, or support orders. * * *" The challenged judgment here concerns a guardian's fees which constitute costs. See Civ. R. 75(B). It does not concern custody, support, or alimony, so the cited language in Civ. R. 75(G) has no application to this appeal.

Moreover, Civ. R. 75(G) does not authorize a stay without security where it does apply. Rather, it eliminates an appellant's absolute right to a stay for orders involving custody, support, or alimony, even if the appellant proffers security. The preferred custody or the recipient's need for support or alimony may preclude any stay. Civ. R. 75(G) gives the court discretion to grant or deny a stay for those orders, or otherwise to modify them during an appeal.

Nevertheless, the court should con-dition a stay for a monetary judgment on security to pay that judgment, whenever it grants such a stay. Thus, Civ. R. 75(G) also provides:

"The trial court may, when a motion to modify a custody, support or alimony order is filed prior to the filing of a notice of appeal, modify the order for the period of the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party and in the best interests of the children involved."

The court can and should condition a stay of a monetary order on the posting of appropriate security.

The mother aptly states that the court mistakenly cited Civ. R. 60(A) as its authority to modify the initial stay order. That rule permits the court to correct clerical errors so that the order reflects the court's original intention. *Musca* v. *Chagrin Falls* (1981), 3 Ohio App. 3d 192, 194, 3 OBR 219, 221, 444 N.E. 2d 475, 477. It does not permit the court to make a different or supplemental legal decision. *Dentsply Internatl., Inc.* v. *Kostas* (1985), 26 Ohio App. 3d 116, 118, 26 OBR 327, 329, 498 N.E. 2d 1079, 1081.

Nevertheless, the court had continuing jurisdiction to take appropriate action to aid a pending appeal. *Powell* v. *Turner* (1984), 16 Ohio App. 3d 404, 405, 16 OBR 474, 475, 476 N.E. 2d 368, 369. It retained authority to permit or preclude the enforcement of its judgment until the appellant posted an approved supersedeas bond. *State, ex rel. Klein,* v. *Chorpening* (1983), 6 Ohio St. 3d 3, 4, 6 OBR 2, 3, 450 N.E. 2d 1161, 1163. Therefore, the court properly modified its previous stay to condition its continued efficacy on the posting of appropriate security for the guardian's judgment.

We overrule the mother's two assigned errors in her separate appeal. Pursuant to our discussion of the principal appeal, we reverse the part of the

judgment which terminated visitation and child support. We remand that portion of the judgment for the court to determine appropriate terms and conditions for visitation and child support, from the evidence already presented on those issues. We affirm the remainder of the challenged orders.

*Judgment accordingly.*

NAHRA, P.J., and STILLMAN, J., concur.

SAUL G. STILLMAN, J., retired, of the Eighth Appellate District, sitting by assignment.