JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Phillips C. Witter ("Witter"), appeals the trial court's modification of his child support obligation. Finding merit to the appeal, we reverse and remand.
 {¶ 2} This matter arises from a 1997 motion to modify child support filed by plaintiffappellee, Kimberly Jarvis ("Jarvis"), for the benefit of her daughter, B.J., who is also Witter's daughter. When paternity was established in 1994, the trial court ordered Witter to pay $1,000 per week in child support.
 {¶ 3} On August 25, 1994, the parties entered into an agreed entry, whereby the court ordered Witter to pay a lump sum of $75,000 for past care and support, attorney fees, and litigation costs. Additionally, Witter agreed to pay Jarvis $2,720 per month in child support, which included poundage and reimbursement for half the cost of B.J.'s medical insurance. The order was based on the court's findings that Witter's "financial condition is extremely complex and uncertain, due to numerous business interests, many of which are in extreme financial difficulty." Attached to the entry were Witter's exhibits, which indicated Witter faced possible bankruptcy and a $12 million lawsuit by Premier Bank.
 {¶ 4} In March 1997, Jarvis moved to modify the child support based on a change of circumstances, i.e. Witter's financial status, because he settled the lawsuit with Premier Bank and was also successful on his counterclaim. Jarvis alleged that Witter's financial status increased by at least $57 million.
 {¶ 5} The magistrate conducted a hearing on the motion to modify in July 1998. The magistrate found insufficient evidence to make a proper determination of support and appointed a guardian ad litem ("GAL") for B.J. After a lengthy discovery process and multiple financial analyses were conducted, the magistrate reconvened the hearing on the motion to modify in February and May 2002.
 {¶ 6} In July 2003, the magistrate recommended, and the trial court agreed, that Witter should pay $13,000 plus poundage, per month in child support, to be applied retroactively to the date modification was sought. Witter was also required to pay a substantial portion of Jarvis' attorney fees and litigation expenses and nearly all of the GAL's fees and expenses, including expert fees.
 {¶ 7} Witter appeals this decision, raising thirteen assignments of error, which will be discussed together and out of order where appropriate.
 Standard of Review {¶ 8} A trial court's decision regarding a child support obligation will not be reversed on appeal absent an abuse of discretion. Pauly v. Pauly, 80 Ohio St.3d 386, 390,1997-Ohio-105, 686 N.E.2d 1108. An abuse of discretion is more than an error of law, it connotes that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. We must give deference to the trial court as the trier of fact because it is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E. 2d 1273. So long as the decision of the trial court is supported by some competent, credible evidence going to all the essential elements of the case, we will not disturb it.Masitto v. Masitto (1986), 22 Ohio St.3d 63, 66,488 N.E.2d 857.
 {¶ 9} With these principles in mind, we proceed to address Witter's assignments of error.
 Motion to Modify Child Support {¶ 10} In his first assignment of error, Witter argues that the trial court erred in not dismissing Jarvis' motion to modify child support in December 1998 because Jarvis failed to sustain her burden of proving that there was a substantial change in circumstances to warrant the modification.
 {¶ 11} The law is clear that the party seeking modification of child support bears the burden of showing that a substantial change in circumstances has occurred. Olesky v. Olesky,
Cuyahoga App. No. 82646, 2003-Ohio-5657. Here, Jarvis filed a motion to modify, alleging that a substantial change in circumstances occurred when Witter settled a lawsuit in which he received a monetary award and was released from certain financial obligations. A copy of the newspaper article discussing the settlement and lawsuit was attached to the motion. Therefore, Jarvis had the burden to prove that a change in circumstances had indeed occurred.
 {¶ 12} The magistrate's decision in December 1998 determined that "insufficient evidence has been presented to make the proper determination of support. * * * find it to be in the best interest of the child to ensure that there is sufficient evidence to make a ruling on the Motion to Modify Support."[1]
 {¶ 13} This court has held that the failure to present sufficient evidence to justify a modification of child support warrants a denial or dismissal of the motion. See Olesky,
supra. See, also, Slota v. Slota (Sept. 4, 1991), Medina App. No. 1992. However, the circumstances in the instant case are distinguishable from the typical support modification case.
 {¶ 14} First, while Jarvis bore the burden to provide all evidence necessary to make a determination of substantial change, discovery of the financial documents of both parties was problematic. R.C. 3113.215(B)(5)(a) provides that the court shall not modify a child support order unless the parties verify their current and past incomes by electronic means or with suitable documentation. In the instant case, discovery requests were made and motions to compel were filed, and the record shows that neither party was forthcoming with financial records and information, thus inhibiting the court's determination of current and past incomes.
 {¶ 15} Secondly, in order to determine if modification of the current child support order is appropriate, a two-step analysis must be utilized. Woloch v. Foster (1994), 98 Ohio App.3d 806,64 N.E.2d 918. First, there must be a determination of whether a change of circumstances exists. Id. R.C. 3113.215(B)(4) requires a "recalculation" of the child support worksheet. If a ten percent difference exists between the previous worksheet and the recalculated one, a substantial change has been demonstrated.DePalmo v. DePalmo, 78 Ohio St.3d 535, 1997-Ohio-184,679 N.E.2d 266, paragraph 2 of syllabus. A recalculation is made assuming that an initial calculation was generated in connection with the initial support order. Although Witter attached a self-prepared child support worksheet as an exhibit to the agreed entry in 1994, the entry stated that no worksheet was generated because the parties waived the completion of the worksheet and agreed on an amount. Moreover, a court is not required to accept any calculations in a worksheet prepared by any party to the action. Marker v. Grimm (1992), 65 Ohio St.3d 139, 142,601 N.E.2d 496, 498. In the modification hearing, the trial court was unable to compare the new worksheet to a previous one because one was not previously generated. Without this comparison, the trial court could not conduct a ten percent change-of-circumstances determination.
 {¶ 16} In Marker, supra, the Ohio Supreme Court held that R.C. 3113.215(B)(1) requires that a calculation of the amount of an obligor's child support obligation must be made "in accordance with" the basic child support schedule set forth in R.C.3113.215(D), the applicable worksheet in R.C. 3113.215(E) or (F), and other requirements of the law. Id. at 141. This requirement must be strictly followed.
{¶ 17} "A review of R.C. 3113.215 leads us to the conclusionthat the statute mandates that a court `use' a worksheetidentical in content and form to the R.C. 3113.215(E) or (F)model worksheet, and that the amount of an obligor's childsupport obligation must be calculated `in accordance with,' and`pursuant to,' the basic child support schedule and appropriateworksheet. In our judgment, these mandates very clearly indicatethat a worksheet must actually be completed for the order ormodification of support to be made. The responsibility to ensurethat the calculation is made using the schedule and worksheetrests with the trial court. R.C. 3113.215(B)(1) provides that thecourt, in performing its duties under the statute, is notrequired to accept any calculations in a worksheet prepared byany party to the action or proceeding. As R.C. 3113.215 requiresthe applicable worksheet to be completed, there is every reasonto require that the trial court include that document in therecord. Only in this fashion can appellate courts be assured thatthe literal requirements of R.C. 3113.215 have been followed, andthat an order or modification of support is subject to meaningfulappellate review.
 {¶ 18} We hold that a child support computation worksheetrequired to be used by a trial court in calculating the amount ofan obligor's child support obligation in accordance with R.C.3113.215 must actually be completed and made a part of the trialcourt's record.
• * *
{¶ 19} Again, the terms of R.C. 3113.215 are mandatory innature and must be followed literally and technically in allmaterial respects." Id. at 142-143.
 {¶ 20} When the court is asked to modify a preexisting order for the payment of child support, "the court must apply the ten percent test established by 3113.215(B)(4) in the Child Support Guidelines and the standards set out in Marker v. Grimm (1992),65 Ohio St.3d 139, 601 N.E.2d 496." DePalmo, supra.
 {¶ 21} Here, no previous court-generated child support worksheet existed. The DePalmo court held that "the trial court has the obligation to test any proposal of the parents to see if it meets the Child Support Guidelines under the Marker standard even if the parties agree between themselves to a different amount or agree that only one party shall assume support." Id. at 270. When the initial agreement for child support was established in 1994, the trial court did not make any findings as to whether it tested the proposal or if it met the child support guidelines.
 {¶ 22} Because no child support worksheet was generated in the initial agreement, as expressly mandated by R.C. 3113.215, there could be no determination that a substantial change existed under the ten percent standard. Thus, the modification hearing could be viewed as an initial support determination, and the court did not abuse its discretion in failing to dismiss the motion to modify.
 {¶ 23} Accordingly, Witter's first assignment of error is overruled.
 Actions Involving Guardian ad Litem {¶ 24} In his second, third, fourth, ninth, and twelfth assignments of error, Witter challenges the trial court's decisions regarding the GAL. He argues that the trial court abused its discretion in appointing a guardian ad litem in this matter, adopting the GAL's proposed findings of fact and conclusions of law, allowing the GAL over seven months to submit a closing argument without striking the argument and proposed magistrate's decision, and allowing the GAL to conduct extensive discovery directed solely at him and not at Jarvis.
 Appointment of Guardian ad Litem {¶ 25} In his second assignment of error, Witter claims that the trial court abused its discretion when it appointed a GAL. He claims that the GAL acted as an adverse party as well as a "special master."
 {¶ 26} Juv.R. 4(B) provides that a GAL shall be appointed to protect the interests of a child in a juvenile proceeding when:
{¶ 27} "* * * (2) The interests of the child and the interestsof the parent may conflict;
• * *
{¶ 28} (4) The court believes that the parent of the child isnot capable of representing the best interest of the child.
• * *
{¶ 29} (8) Appointment is otherwise necessary to meet therequirements of a fair hearing."
 {¶ 30} A GAL should be appointed for the child where the interests of
 {¶ 31} the child and parents differ. Still v. Hayman,153 Ohio App.3d 487, 2003-Ohio-4113, 794 N.E.2d 751; Ransome v.Lampman (1995), 103 Ohio App.3d 8, 658 N.E.2d 313.
 {¶ 32} Here, we find that B.J.'s interests may have been in conflict with those of Witter and Jarvis, that Jarvis may not have been capable of representing B.J.'s best interest, and that the appointment of a GAL was necessary for a fair hearing and a thorough review of the extraordinary financial circumstances presented by the parties.
 {¶ 33} Moreover, Witter has failed to cite any legal authority to demonstrate how the trial court abused its discretion in appointing a GAL in this case. See, App.R. 16(A)(7). Therefore, we find that the trial court acted within its discretion in appointing a GAL.
 {¶ 34} Accordingly, his second assignment of error is overruled.
 Findings of Fact and Conclusions of Law {¶ 35} In his third assignment of error, Witter claims that the trial court abused its discretion when it adopted the GAL's proposed findings of fact and conclusions of law, which he claims violated Juv.R. 40(E)(1) and demonstrated that the court abdicated its responsibilities to the GAL. He also claims that the trial court merely "rubber stamped" the magistrate's decision without conducting an independent review of the issues.
 {¶ 36} The record is devoid of any request by the magistrate that the parties submit proposed findings of fact and conclusions of law. However, the fact that the GAL submitted them with his recommendation is not error, per se. Even though a pleading is filed or a proposed entry is submitted, the trial court has the discretion to strike the filing or submission if it so chooses. Civ.R. 12(F). Here, while the magistrate did not request the submission, it was not error for the court to adopt the proposed findings of fact and conclusions of law.
 {¶ 37} Juv.R. 40(E)(1) provides that the magistrate shall prepare, sign, and file a magistrate's decision, which the magistrate did in this matter. While the magistrate may have adopted the GAL's proposed decision, it is not error to do so. The trial court may adopt verbatim a party's proposed findings of fact and conclusions of law as its own if it has thoroughly read the document to ensure that it is completely accurate in fact and law. Adkins v. Adkins (1998), 43 Ohio App.3d 95,539 N.E.2d 686, citing Paxton v. McGranahan (Oct. 31, 1985), Cuyahoga App. No. 49645 (A trial court may adopt proposed findings and conclusions verbatim pursuant to Civ.R. 52). See, also, State v.Jester, Cuyahoga App. No. 83520, 2004-Ohio-3611, citing Statev. Combs (1994), 100 Ohio App.3d 90, 110, 652 N.E.2d 205.
 {¶ 38} In the instant case, both the GAL's proposed findings of fact and conclusions of law and the magistrate's decision are substantially similar. Witter has failed to show any factual inaccuracies in either the GAL's proposed findings of fact and conclusions of law or the magistrate's decision. Although he contests the calculations used to determine the child support award, these are not factual inaccuracies. We find no evidence to show that the magistrate failed to thoroughly review the findings and conclusions. Therefore, we cannot say that the magistrate abdicated its duty by adopting the GAL's submission; thus, we find no abuse of discretion.
 {¶ 39} We also find that the trial court did not merely "rubber stamp" the magistrate's decision without conducting an independent review of the issues. While the trial court is obligated to conduct an independent analysis of the facts and conclusions contained in the magistrate's report, it is not obligated to modify the magistrate's decision when it fully agrees with that decision. See, Madama v. Madama (Sept. 3, 1998), Cuyahoga App. No. 73288. Absent a specific showing that demonstrates the trial court did not review the issues, we cannot say the trial court abused its discretion in adopting the magistrate's recommendation.
 {¶ 40} Accordingly, Witter's third assignment of error is overruled.
 Closing Argument {¶ 41} In his fourth and twelfth assignments of error, Witter claims that the trial court abused its discretion in allowing the GAL more than seven months to submit a closing argument instead of striking the closing argument and recommendation.
 {¶ 42} "An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7)." State v. Martin (July 12, 1999), Warren App. No. CA99-01-003, citing Meerhoff v. Huntington Mortgage Co.
(1995), 103 Ohio App.3d 164, 169, 658 N.E.2d 1109. "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), Summit App. Nos. 18349 and 18673. Because Witter has failed to cite any legal authority to support his arguments, this court will not make his arguments for him.
 {¶ 43} Civ.R. 12(F) allows a court to strike any pleading or material determined to be insufficient, redundant, immaterial, impertinent, or scandalous. Moreover, Civ.R. 12(F) motions are disfavored and are ordinarily not granted unless the language in the pleading at issue has no possible relation to the controversy and is clearly prejudicial. Hagins v. Eaton Corp. (Mar. 31, 1994), Cuyahoga App. No. 64497, citing, Morrow v. South,540 F.Supp. 1104 (S.D.Ohio 1982); Lirtzman v. Spiegel, Inc.,493 F.Supp. 1029 (N.D.Ill. 1980); 5 Wright Miller, Federal Practice and Procedure Section 1380 (1969).
 {¶ 44} We are mindful that the best interest of the child is the issue in a child support modification hearing. The GAL was appointed to represent the child's best interest. Without the recommendation of the GAL, the appointment would be superfluous. Therefore, the closing argument and recommendation of the GAL were material and pertinent, and clearly not appropriate to be stricken.
 {¶ 45} Therefore, we find that the trial court did not abuse its discretion in permitting the GAL to file his closing argument and recommendation. We also find no abuse of discretion in the court's denying Witter's motion to strike.
 {¶ 46} Accordingly, Witter's fourth and twelfth assignments of error are overruled.
 Inappropriate and Biased Actions {¶ 47} In his ninth assignment of error, Witter claims that the trial court erred in allowing the GAL to act inappropriately and with extreme bias and prejudice against Witter in the exercise of his duties. He claims it was error to allow the GAL to visit his home and allow the GAL to conduct extensive discovery directed solely at him and none involving Jarvis.
 {¶ 48} The role of the GAL is to investigate the ward's situation and then ask the court to do what the GAL feels is in the ward's best interest. In re Baby Girl Baxter (1985),17 Ohio St.3d 229, 232, 479 N.E.2d 257.
 {¶ 49} We find that it was not unreasonable for the GAL to visit Witter's residence during his investigation because a parent's standard of living is one factor that may be taken into consideration in determining child support. R.C. 3119.23. We also find that it was not unreasonable to conduct discovery or hire an expert to ascertain Witter's finances and gross income because his financial affairs were extremely complex.
 {¶ 50} However, we find that it was unreasonable that the discovery and investigation was directed solely toward Witter. The GAL repeatedly argues in its appellate brief that the "Appellant never indicated to the Guardian Ad Litem that there was an issue as to the appropriate income for Appellee." We find that Witter had no duty to "indicate" to the GAL that there was a problem with Jarvis' income. It is the duty of the GAL to investigate for the child's best interest, including the financial situation of both parents. Relying exclusively on Jarvis' tax returns and her subsequent testimony is insufficient to determine her gross income, under the circumstances of the instant case. If this was acceptable, Witter's tax returns and testimony would have been sufficient, as well, to determine his gross income. By the GAL's own admission, there was no investigation nor discovery conducted as to Jarvis' income, finances, or standard of living. An investigation of Jarvis' income and financial affairs by the GAL is particularly essential when the magistrate chooses to adopt the GAL's recommendation.
 {¶ 51} A review of the testimony and the evidence indicated that this entire case was complicated with respect to each parent's financial circumstances. Each parent owned their own business or businesses; thus, this fact alone made it difficult to determine their precise gross income. See, Cicchini v. Crew
(Dec. 18, 2000), Cuyahoga App. Nos. 74009, 76954 (cases involving child support obligations of persons who own businesses are frequently complicated because they have some ability to control and/or report the business' and their own financial transactions, including income, assets, and disbursements); Glassman v.Offenberg, Cuyahoga App. Nos. 78885, 78886, 79425, 79426, 2003-Ohio-269. Moreover, relying only on a party's federal tax returns and limited admissions to determine child support is an abuse of discretion when that party owns a business or an interest therein. Bowen v. Thomas (1995), 102 Ohio App.3d 196,201, 656 N.E.2d 1328, 1331.
 {¶ 52} Therefore, we find that the GAL did not fulfill its duty to investigate the financial circumstances and standard of living of both parties, to wit: Jarvis. Accordingly, we find merit to Witter's ninth assignment of error.
 Expert Rebuttal Testimony {¶ 53} In his fifth assignment of error, Witter claims that the trial court abused its discretion by refusing his request to present expert rebuttal testimony and for refusing to sanction Jarvis for her failure to provide discovery and obey court orders.
 Rebuttal {¶ 54} Witter claims that his expert, who was called to testify as to Jarvis' financial circumstances, should have been allowed to rebut both the GAL's and Jarvis' experts, who testified regarding Witter's financial situation. We disagree.
 {¶ 55} It is well settled that "a party has an unconditional right to present rebuttal testimony on matters which are first addressed in an opponent's case-in-chief and should not be brought in the rebutting party's case-in-chief." Phung v. WasteManagement, 71 Ohio St.3d 408, 410, 1994-Ohio-389,644 N.E.2d 286. See, also, Katz v. Enzer (1985), 29 Ohio App.3d 118,504 N.E.2d 427. However, in instances where the witness is an expert, Loc.R. 21.1 of the Cuyahoga County Court of Common Pleas, General Division, requires a written report from that expert as to the issues upon which the expert will be testifying.
 {¶ 56} Loc.R. 21.1(A) provides that when an expert witness is expected to be called by a party, that party, in advance of trial, must exchange with all other counsel the written report upon which the expert is expected to testify. Section (A) also requires the party who bears the burden of proof to give the opposing party its report first and then the responding party is to submit opposing reports. Here, this procedure was not followed; all parties exchanged their respective reports one week prior to trial. However, Witter did not object to the mutual exchange, nor did he request a continuance in order to file a rebuttal report.
 {¶ 57} Subsection (B) of Loc.R. 21.1 provides that unless a written report has been procured from the expert witness and provided to opposing counsel, the expert witness may not testify:
{¶ 58} "It is counsel's responsibility to take reasonablemeasures, including the procurement of supplemental reports, toinsure that each report adequately sets forth the nonpartyexpert's opinion. * * * The report of a non-party expert mustreflect his opinions as to each issue on which the expert willtestify. A non-party expert will not be permitted to testify orprovide opinions not raised in his report." Loc.R. 21.1(B).
 {¶ 59} In Dolan v. Cleveland Builders Supply Co. (June 17, 1993), Cuyahoga App. No. 62711, this court concluded that Loc.R. 21.1 applies to the production of expert reports used for rebuttal purposes. "By using the phrase `all supplemental reports,' [Loc.]R. 21.1 makes irrelevant the intended purpose of the report." Id.
 {¶ 60} In the instant case, Witter did not file a rebuttal or supplemental report after the expert reports submitted by the GAL or Jarvis; therefore, Witter's expert was not permitted to testify as a rebuttal witness. Thus, the trial court did not abuse its discretion in denying Witter the opportunity to call his expert as a rebuttal witness.
 Sanctions {¶ 61} Witter has not complied with App.R. 16(A)(7), which requires that he provide authority to support his contention that the trial court erred in not sanctioning Jarvis for her noncompliance with discovery. A review of the record demonstrates that neither party fully complied with discovery and that neither party was awarded sanctions in response to motions to compel.
 {¶ 62} The award of discovery sanctions is purely within the discretion of the trial court and, absent a showing of an abuse of discretion, this court will not reverse such a decision.Nakoff v. Fairview Gen. Hosp. 75 Ohio St.3d 254, 1996-Ohio-159,662 N.E.2d 1, syllabus. Based on the circumstances of this case, the trial court did not abuse its discretion in denying sanctions.
 {¶ 63} Accordingly, Witter's fifth assignment of error is overruled.
 Child Support Modification {¶ 64} In his sixth, seventh, and eighth assignments of error, Witter challenges the child support modification. He claims that the trial court abused its discretion in finding that a change in circumstances supported an upward modification of child support, imputing income to him, and ordering monthly child support of $13,000.
 {¶ 65} As previously stated, a modification of child support involves a two-step process. Woloch, supra. First, there must be a determination as to whether there has been a substantial change in circumstances. Id. Witter argues that no change of circumstances exists because his financial situation has not changed since the inception of the child support order in 1994. He also claims that Jarvis' financial status has changed, as evidenced by her tax returns and, therefore, his child support obligation should have been lowered. We disagree.
 {¶ 66} In order to determine whether a change of circumstances exists, the court is required by statute to use a child support worksheet to calculate the amount of support that should be paid. R.C. 3119.79.[2] If the new amount deviates from the existing order by ten percent, a substantial change of circumstances has been demonstrated. DePalmo, supra.
 {¶ 67} Here, no child support worksheet was generated in 1994, thus it is difficult to determine whether a change in circumstances exists. But in comparing the 1994 monthly obligation of $2,720 and the 1997 amount of $18,722 in the magistrate's decision, a ten percent change has occurred. Moreover, the focus was on Witter's financial situation in the 1994 agreed entry, as the entry states: "The court finds that Defendant's financial condition is extremely complex and uncertain, due to numerous business interests, many of which are in extreme financial difficulty."
 {¶ 68} Thus, while Witter's financial assets may not have changed, their dynamics and characterization changed. At the time of the agreed entry, Witter was allegedly on the brink of bankruptcy and was involved in several lawsuits. However, since the initial support order, a multimillion dollar lawsuit was settled and he was successful on a counterclaim that alleviated financial obligations and generated retention of significant assets. Therefore, it was not an abuse of discretion to find that a significant change in circumstances occurred.
 {¶ 69} Finding that a change in circumstances exists, the trial court may then modify child support in accordance with the statutory factors and guidelines. DePalmo, supra; Woloch,
supra. The child support guidelines are concerned solely with determining how much money is actually available for child support purposes. Glassman, supra.
 {¶ 70} To determine the child support obligation, the trial court must determine the annual income of each parent. R.C.3119.01(B)(5) provides in relevant part that:
{¶ 71} "Income means either of the following:
 (a) For a parent who is employed to full capacity, the grossincome of the parent;
(b) For a parent who is unemployed * * * the sum of the grossincome of the parent, and any potential income of the parent."
 {¶ 72} Here, the court considered Jarvis' gross income by reviewing her tax returns for the years 1994 and 1997-2000. The court found that some expenses were paid by Jarvis' business, which should have been included in her gross income for 2000.
 {¶ 73} The court found Witter's gross income difficult to determine due to his multiple business, real estate, and equine interests. Thus, the court found that Witter was voluntarily unemployed for the purposes of determining his gross income. The court based this finding upon the testimony of the GAL's expert, Robert Greenwald ("Greenwald"). Greenwald concluded that because Witter reported no salary or wages from his business interests, he was voluntarily unemployed. Furthermore, Greenwald opined that many of Witter's assets and business interests were voluntarily non-income-producing or underproducing. He concluded that Witter was voluntarily underemployed and that Witter's imputed income should be $9.4 million for each year from 1997 to 2000.
 {¶ 74} Moreover, the court reviewed Witter's individual tax returns from 1997 to 2000, which indicated that he claimed a loss of income each year. Jarvis' expert agreed that income should be imputed to Witter; however, the expert stated that Witter's imputed yearly income ranged from approximately $4.8 million to $5 million. The court accepted Greenwald's calculation and imputed income to Witter in the amount of $9.4 million.
 {¶ 75} Witter claims it was an abuse of discretion to impute income because the court did not have sufficient basis to do so. Moreover, he argues that his income, alone, exceeds the $150,000 limit set by R.C. 3119.04(B) and, thus, the imputation of income was not necessary.
 {¶ 76} In the instant case, there are two means by which the court could determine Witter's child support obligation. First, it could impute income to Witter and reflect that amount on the child support worksheet.
 {¶ 77} A court may not impute income without first finding that a party is voluntarily unemployed or underemployed. Inscoev. Inscoe (1997), 121 Ohio App.3d 396, 424, 700 N.E.2d 70, 88, citing Rock v. Cabral (1993), 67 Ohio St.3d 108,616 N.E.2d 218. If the court makes such finding, then the court determines the amount of income to impute, based on the factors of R.C.3119.01(B)(11)(a) and (b), and the facts and circumstances of the case. Smith v. Smith (Feb. 10, 2000), Franklin App. Nos. 99AP-453 and 99AP-818.[3]
 {¶ 78} Here, the trial court made a finding that Witter was voluntarily unemployed and thus imputed income to him in the amount of $9.4 million. Although the court did not make an independent determination of the amount of income to impute, the court found Greenwald's report and testimony persuasive; thus, it was not an abuse of discretion to rely on Greenwald's expert testimony.
 {¶ 79} The second means by which the trial court could determine Witter's support obligation is to consider R.C.3119.04(B). When the combined gross income of both parents is greater than $150,000, the court must determine the amount of child support "on a case-by-case basis and shall consider the needs and standard of living of the children who are the subject of the child support order and of the parents." R.C. 3119.04(B). Witter stipulated that his net worth is $100 million, with $60 million as non-income-producing and $40 million as income-producing. Moreover, Witter admits that he receives at least $900,000 in annual dividends. Thus, it is uncontroverted that, considering only Witter's finances, the parties' combined gross income exceeds $150,000.
 {¶ 80} Regardless of the method the court used, Ohio law mandates that a calculation of an obligor's child support obligation must be made in accordance with the basic child support schedule, applicable worksheet, and other requirements of the law. See, Marker, supra. Thus, before the court can even consider the appropriateness of the amount, it must first consider the basic schedule and worksheet, and the incomes of the parties play a vital role in determining child support. Witter contends that his adjusted gross income is a significant negative number based on losses generated by his various business interests. However, he has also stipulated that his net worth is $100 million and that he receives annual dividends of approximately $900,000, which are to be considered in calculating "gross income." R.C. 3119.01(B)(7). While he argues that $900,000 would be a significant and sufficient number to calculate child support, this is not an accurate reflection of his true gross income. In fact, there was no testimony or evidence as to his true gross income.
 {¶ 81} Because the law mandates that a child support worksheet be completed for a modification to be made, the court needed to assign an amount for Witter's gross income, and inserting the imputed income of $9.4 million satisfied the requirement. Furthermore, because no determination of Witter's true gross income was made, the trial court did not abuse its discretion in imputing income to Witter to generate the mandated child support worksheet.
 {¶ 82} In determining the appropriate amount of support which would be in the child's best interest, the court may deviate from the amount generated from the child support worksheet or basic support schedule. R.C. 3119.22. Under the first means upon which support could be determined, the imputed amount of $9.4 million generates a monthly obligation in amounts ranging from $18,722.89 to $14,851.25 from 1997 to 2000. R.C. 3119.04(B) and the basic child support schedule provide for a case-by-case determination of the amount of the child support obligation when combined incomes exceed $150,000. Thus, the minimum obligation for parties with a combined income of $150,000 would be $15,218 annually (approximately $1,268.17 monthly).
 {¶ 83} Regardless which means is used, the court is vested with the discretion of deviating from the child support worksheet and basic schedule. This deviation is permissible upon consideration of the statutory factors listed in R.C. 3119.23, if it "determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet * * * would be unjust or inappropriate and would not be in the best interest of the child." R.C. 3119.22. See, also, Farmer v. Farmer,
Medina App. No. 03CA0115-M, 2004-Ohio-4449.
 {¶ 84} In the instant case, the trial court found that it would be unjust, inappropriate, and not in B.J.'s best interest to order support pursuant to the basic support schedule, and thus deviated upwards and imposed a monthly support obligation of $13,000, which is significantly less than the worksheets provided in the magistrate's decision. Witter claims this amount was an abuse of discretion.
 {¶ 85} The trial court considered all the relevant factors of R.C. 3119.23, including any special and unusual needs of the child, disparity of incomes between the parties or households, taxes actually paid by each parent, in-kind contributions from a parent, relative financial resources, assets, and needs of each parent, the standard of living of each parent, and that which the child would have enjoyed had the parents married, educational needs and opportunities, responsibility of each parent for the support of others, and any other relevant factor. However, the trial court abused its discretion when it imposed a monthly child support obligation of $13,000.
 {¶ 86} The total monthly child-related expenses for B.J. in 1996 was $2,703 and in 2000 totaled $8,198.75. These expenses included the child's share of the mortgage, dry cleaning and laundry, food, horse-related expenses, schooling, gifts, and vacations. The anticipated child-related expenses totaled $31,622.66 per month, which also included a college savings plan, trust fund contribution, and a horse acquisition fund.
 {¶ 87} This court has held that a father's duty of support extends only to "necessaries." Bailey v. Mitchell (1990),67 Ohio App.3d 441, 442, 587 N.E.2d 358, 359; citing Kulcsar v.Petrovic (1984), 20 Ohio App.3d 104, 105, 484 N.E.2d 1365. "In ascertaining the necessary and reasonable amounts of child support, the trial court should examine the child's current needs." Id.; citing Bright v. Collins (1982),2 Ohio App.3d 421,426,442 N.E.2d 822,828. Thus, when looking at the current needs of the child, and even considering her participation in equine activities, the court's child support amount satisfies both parents' duty to support. Moreover, regardless of who lives in the home, the amount of the monthly mortgage will be constant. Therefore, apportioning a share to B.J. is unconscionable. Witter and Jarvis never maintained a household together, so there is no need to establish a standard of living that B.J. never experienced.
 {¶ 88} In Carr v. Blake (Feb. 18, 2000), Hamilton App. No. C-990174, the court considered the child support obligation of a professional football player. The appellate court found that the trial court did not abuse its discretion in awarding a downward deviation of the child support schedule when the statutorily mandated amount was not in the child's best interest. The court noted its concern that a child support award of $280,000 per year would compromise the mother's initiative to provide her share of the child support.
 {¶ 89} While we note that Jarvis is gainfully employed through her own business, the amount Witter has been ordered to pay may inhibit her common law duty to support. This support order should provide for B.J.'s current needs and not create any future benefit.
 {¶ 90} We recognize that Witter has substantial resources available to satisfy the obligation imposed by the trial court, but both parents have a duty to support B.J. In Haskins v.Bronzetti, 64 Ohio St.3d 202, 1992-Ohio-140, 594 N.E.2d 582, the Ohio Supreme Court found:
{¶ 91} "The General Assembly has, in various instances,codified the common-law duty imposed on parents to support theirminor children. For example, former R.C. 3103.03 * * * placed astatutory burden on the mother and father, regardless of theirmarital status, to support their minor children. In reDissolution of Marriage of Lazor (1991), 59 Ohio St.3d 201,572 N.E.2d 66. Further, former R.C. 3109.05(A) provided, in part,that: `[i]n a divorce, dissolution of marriage, alimony, or childsupport proceeding, the court may order either or both parents tosupport or help support their children, without regard to maritalmisconduct. * * *'" (Emphasis added.) See, also, former R.C.3109.03 (when a man and woman are married and living separate andapart from each other, or are divorced, questions as to the careof their children are properly before a court of competentjurisdiction and both are equally responsible for the care oftheir children); former R.C. 2111.08 (wife and husband are thejoint natural guardians of their minor children and are equallyresponsible for their care).
 {¶ 92} Each parent has a common law duty to support their child and when considering the necessary and current living expenses of the child, the amount awarded in child support would more than cover both parents' duty to support the child.
 {¶ 93} Accordingly, we overrule Witter's sixth and seventh assignments of error, but sustain his eighth assignment of error.
 Fees {¶ 94} In his tenth and eleventh assignments of error, Witter argues that the trial court abused its discretion by ordering him to contribute towards Jarvis' attorney fees and expenses, and to pay a majority of the GAL's fees and expenses, including the GAL's expert fees. R.C. 3123.17(B) authorizes a court in any proceeding in which a court issues or modifies a support order, to order either party to pay the costs of the action, including, but not limited to, attorney's fees.
 Attorney Fees {¶ 95} Whether to grant an award of attorney fees is left to the sound discretion of the trial court, and such decision will not be reversed absent an abuse of discretion. Holcomb v.Holcomb, Lorain App. No. 01CA007795, 2001-Ohio-1364.
 {¶ 96} In Hummer v. Hummer (Aug. 28, 1986), Franklin App. No. 86AP-293, the court stated that, in a child support proceeding, an attorney fee award is in the nature of child support and it is within the court's authority to award attorney fees which should be determined based upon the circumstances of each case. A court should balance certain factors when determining if an award of attorney fees is warranted, as follows:
{¶ 97} "* * * The factors to be considered include the needsof the children, the change in circumstances including increasesin income, the assets of the parties, the ability or inability ofeach party to pay attorney fees, the degree of increase in childsupport awarded, the total amount of the attorney fees, theproportion of attorney fees caused by undue delay or resistanceby either party in resolving the child-support issue, and theeffect of payment of attorney fees upon the custodial parent'sability to contribute a proportionate share of child support. * * *Hummer, supra, citing Cohen v. Cohen (1983),8 Ohio App. 3d 109, 456 N.E.2d 581. See, also, Smith v. Smith (Feb.10, 2000), Franklin App. Nos. 99AP-453, 99AP-818.
 {¶ 98} In the instant case, the trial court determined that "based upon the disparate incomes of the parties, Defendant should pay attorney fees to Counsel for Plaintiff." The trial court did not consider any of the above factors, other than the incomes of the parties, in determining whether the award of attorney fees was warranted. We find that failing to consider all necessary factors and their application to the circumstances in the case is error. It is an abuse of discretion to arbitrarily award attorney fees to a party without any demonstration of why they are warranted.
 {¶ 99} While this court has previously found that it is not an abuse of discretion to allocate a portion of a party's attorney fees in child support cases to the other party, we find that it was an abuse of discretion in this case to require Witter to contribute towards Jarvis' attorney fees without considering or balancing any of the above factors. See, Cicchini, supra.
 GAL Fees and Expert Fees {¶ 100} The trial court has broad authority to tax the GAL fees as costs. Pruden-Wilgus v. Wilgus (1988),46 Ohio App.3d 13,545 N.E.2d 647, Civ.R. 75(B)(2). The court has discretion over the amount of fees, as well as the allocation to either or both of the parties. Davis v. Davis (1988),55 Ohio App.3d 196,200,563 N.E.2d 320, Robbins v. Ginese (1994),93 Ohio App.3d 370,638 N.E.2d 627. Fees may be allocated based on the parties' litigation success and economic status. Davis, supra. Moreover, it is proper to allocate GAL fees based on which party caused the work of the GAL. Marsala v. Marsala (July 6, 1995), Cuyahoga App. No. 67301. In this case, we find that both parties equally caused the work of the GAL, even though the focus was primarily on Witter's finances. Even considering Witter's economic status, we find that the GAL's fees and expenses should have been divided equally between the parties.
 {¶ 101} Therefore, we find that the trial court abused its discretion in ordering Witter to contribute towards Jarvis' attorney fees and to pay a majority of the GAL's fees and expenses. We find that Jarvis should have been responsible for half of the GAL's expert's fees, and that the issue of attorney fees should be reconsidered.
 {¶ 102} Accordingly, Witter's tenth and eleventh assignments of error are sustained.
 Motion for Recusal {¶ 103} In his thirteenth assignment of error, Witter claims that the trial court erred and abused its discretion in denying his motion for recusal.
 {¶ 104} "A trial judge is presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity."Corradi v. Emmco Corp. (Feb. 15, 1996), Cuyahoga App. No. 67407, citing State v. Wagner (1992), 80 Ohio App.3d 88, 93,608 N.E.2d 852.
 {¶ 105} The basis for Witter's motion for recusal concerned the appointment and actions of the GAL and the court's response and leniency to the GAL. Witter claims that these acts created an appearance of impropriety. He contends that because the GAL submitted a proposed magistrate's decision, an ex parte communication and an improper delegation of judicial authority occurred. We disagree.
 {¶ 106} As we previously concluded, it was not an abuse of discretion to appoint a GAL in this matter, to allow the GAL to submit a closing argument and recommendation, or to adopt the proposed magistrate's decision. Therefore, we find no abuse of discretion in the denial of Witter's motion for recusal.
 {¶ 107} Accordingly, Witter's final assignment of error is overruled.
 {¶ 108} Upon remand, the trial court should calculate a child support award in accordance with the mandatory provisions in R.C.3119.79 and the factors set forth in R.C. 3119.23. The trial court should require each party to pay half of the GAL's fees and expenses, including expert fees and expenses. The trial court shall reconsider the award of attorney fees after considering all factors relevant to the instant case. The trial court and/or GAL should investigate each parent's financial circumstances. The trial court should also be mindful that each parent has a common law duty to support and maintain their child; the burden of support should not be placed entirely on Witter.
Judgment reversed and case remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellees the costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Backmon, P.J. and Gallagher, J. Concur.
[1] Because this decision was made prior to the repeal of R.C.3113.215, we will analyze this assignment under former R.C.3113.215.
[2] Revised Code Chapter 3119 was enacted at the time of the evidentiary hearings in the present case, but prior to the magistrate issuing her report and recommendation and before the trial court entered its final judgment. Therefore, we will consider the modification order under R.C. Chapter 3119.
[3] While we recognize that Smith was decided under former R.C. 3113.215, for the most part R.C. Chapter 3119 is a re-enactment of former 3113.215, which split the former statute's many subsections into separate sections of a new revised code chapter, but did not substantially change the statutory framework.