[Cite as *Montgomery v. Montgomery*, 2019-Ohio-1803.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| MARJORIE MONTGOMERY | : | |
| | : | |
| Plaintiff-Appellee/Cross-Appellant | : | Appellate Case Nos. 2018-CA-16 and 2018-CA-19 |
| | : | |
| v. | : | Trial Court Case No. 2015-DR-198 |
| | : | |
| JOEL B. MONTGOMERY | : | (Appeal from Common Pleas Court-Domestic Relations Division) |
| | : | |
| Defendant-Appellant/Cross-Appellee | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 10th day of May, 2019.

. . . . . . . . . .

RONALD P. KELLER, Atty. Reg. No. 0016176, 85 West Main Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee/Cross-Appellant

TOM O. MERRITT, Atty. Reg. No. 0066661, 1480 West Main Street, Tipp city, Ohio 45371
    Attorney for Defendant-Appellant/Cross-Appellee

. . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** Joel Montgomery appeals from a final judgment and decree of divorce; his ex-wife, Marjorie Montgomery, has filed a cross-appeal.[1] According to Joel, the trial court abused its discretion by ordering the sale of his entire gun collection and by awarding one-third of the proceeds to Marjorie. Joel also contends that the trial court abused its discretion by ordering him to pay all credit card debts incurred during the marriage. In her cross-appeal, Marjorie challenges the trial court's decision that $88,000 in cash was a non-marital asset and its decision not to award her one-half, instead of one-third of the proceeds from the sale of the gun collection.

**{¶ 2}** For the reasons discussed below, the assignments of error and the cross-assignments of error lack merit. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 3}** Joel and Marjorie married in November 2011 and separated in July 2014. No children were born during the marriage, but they each had children from prior marriages. On August 7, 2015, Marjorie filed a complaint for divorce, interrogatories, and a request for production of documents. Most of the interrogatories and document requests were directed to financial matters, to property that John possessed before the marriage, and to the properties possessed during the marriage. Among other things, Marjorie asked for copies of all canceled checks from January 1, 2012 to the present; complete copies of federal tax returns for 2012, 2013, 2014, and 2015; and complete

---

[1] For convenience, we will refer to the parties by their first names.

copies of all bank and credit card monthly statements from January 1, 2012 to the present.

{¶ 4} In October 2015, Marjorie also filed a motion for a restraining order to prevent Joel from spending, depleting, or disposing of firearms and $88,000 in cash that local authorities had previously seized from Joel's residence. A list of 215 firearms was attached to the motion. The trial court granted the restraining order on October 19, 2015.

{¶ 5} On January 5, 2016, Marjorie filed a motion to compel. According to the motion, Joel had not responded to any discovery requests. Following a pretrial hearing on January 7, 2016, the magistrate filed an order requiring Joel to comply with all discovery requests within 30 days. Shortly thereafter, Marjorie filed a notice to take Joel's deposition on April 5, 2016.

{¶ 6} At the deposition, Joel claimed he had no financial records because the FBI had confiscated his records in October 2015. Doc. #54, Deposition of Joel Montgomery, pp. 21, 41, and 48. He also claimed he "may or may not" be able to go his banks and ask for helping getting his financial documents. *Id.* at p. 54. Despite the fact that the court had ordered Joel to comply with discovery, he did not produce any documents thereafter, except documents that he attempted to introduce at trial.

{¶ 7} A magistrate held evidentiary hearings on July 21, 2016, and October 13, 2016, and then filed a decision in March 2017, recommending that February 28, 2015 be the de facto termination date of the marriage. The magistrate concluded that the $88,000 in cash had not been accumulated before the de facto termination date of the marriage and awarded that money to Joel. In addition, the magistrate ordered that the gun collection, which was the major disputed asset, be sold and that Marjorie receive one-third of the proceeds.

{¶ 8} Both parties filed objections to the magistrate's report. However, in March 2018, the trial court overruled the objections and filed a divorce decree that the magistrate had recommended. Joel appealed, and Marjorie cross-appealed.

II. Alleged Abuse of Discretion About the Gun Collection

{¶ 9} Joel's First Assignment of Error states that:

The Trial Court Erred and Abused Its Discretion in Ordering the Sale of the Entire Gun Collection and Giving One-Third of the Proceeds to Appellee/Cross[-]Appellant.

{¶ 10} According to Joel, the trial court erred in failing to consider the testimony of witnesses who corroborated his testimony that he had not acquired any guns since his marriage. Joel contends the court relied solely on Marjorie's testimony in order to punish him for failing to turn over evidence.

{¶ 11} In divorce actions, trial courts have broad discretion in deciding an equitable division of property. *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982). We may modify or reverse the court's decision only for abuse of discretion. *Id.*

{¶ 12} An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Decisions are unreasonable if no sound

reasoning supports the decision. *Id.* *Accord Aldo v. Angle*, 2d Dist. Clark No. 09-CA-103, 2010-Ohio-2008, ¶ 33.

{¶ 13} The magistrate's decision noted that there was conflicting testimony about the amount of the gun collection Joel owned before marriage, with Marjorie testifying that many guns were purchased during the marriage, and Joel testifying that he made no gun purchases during the marriage. The magistrate then said:

> Given the significant credibility issues that Husband had during his testimony, his evasive answers to opposing counsel's questions and outright refusal to answer questions during his deposition, the Court relies more on Wife's testimony.

Doc. #60, p. 6.

{¶ 14} In ruling on the objections, the trial court agreed with the magistrate, noting that Joel's testimony was evasive, and that Joel had testified that over 104 of the 300 guns he owned "were purchased prior to the year 2000" when Joel lived in Colorado. Doc. #94, p. 3, citing the October 13, 2016 Transcript ("Tr.2"), p. 101. The court, therefore, concluded that giving Marjorie one-third of the value of the guns was appropriate. *Id.*

{¶ 15} We have reviewed the entire record and find no abuse of discretion. Although Joel presented two witnesses, one witness was his daughter and another was a close friend. The trial court was not required to believe these witnesses, nor was it required to believe Joel. We have repeatedly said that "[t]rial courts resolve witness credibility and the weight to be accorded to the testimony." *Buckingham v. Buckingham*, 2018-Ohio-2039, 113 N.E.3d 1061, ¶ 41 (2d Dist.), citing *Jenkins v. Jenkins*, 2012-Ohio-

4182, 975 N.E.2d 1060, ¶ 18 (2d Dist.). The cautious exercise of appellate discretion "requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 16} Furthermore, the court's comments about Joel's evasiveness are well supported by the record. In fact, using the word "evasive" was an understatement. At his deposition, Joel was asked about his gun collection. Doc. #54 at pp. 54-548. Joel was unable to remember how many guns he owned and repeatedly stated "I don't remember" in response to nearly every question asked, including where he bought the guns, etc. He also said that there were no financial documents that verified the purchase of any guns. *Id.* at p. 56. However, Joel then said he did have documents showing that weapons were purchased before his marriage to Marjorie; he claimed his ex-wife had these documents. *Id.* Although Joel was asked during the deposition to produce these documents, he never produced any documents. *Id.* at p. 57.

{¶ 17} During the first day of trial, Joel again said his ex-wife had the gun documentation; he further said he had tried to get documentation from her, but was unable to do so. July 21, 2016 Transcript ("Tr.1"), pp. 47-48. However, on the second day of trial, he claimed to have found a list of guns that he had moved to Ohio from Colorado in 2003. This discovery occurred when Joel was "scouring" a box in his attic. However, he provided that information to his attorney only the day before the final day of trial, and the list was not provided to Marjorie's counsel until the day of trial. Tr.2 at pp. 99-100,

and 129-132.

{¶ 18} Joel also refused to testify as to values of the guns, and his estimate of how many guns he had varied depending on what day he testified, i.e., either at deposition or trial. The estimate ranged from: (1) 300 (of which he claimed he had sold 104 to support himself after he became ill in 2009); (2) "200"; (3) "more than 200," but he had no recollection as to whether it was more than 250; and (4) 250 was inaccurate; it was "less than 190," "according to the Greene County Office." *See* Tr.1 at p. 45; Tr.2 at pp. 12, 98, and 100-101; and Doc. #54 at p. 55.[2] Even at trial, Joel said he was unable to recall where he bought any of the guns and had no documentation such as bills of sale, etc. Tr.1 at pp. 45-46.

{¶ 19} Joel also stated that he had sold 104 guns since 2009 to fund his surgeries, but offered no documentation of any expenses or, as noted, any documentation of sales. It is true that Joel was diagnosed with cancer in 2009. However, despite this, he admitted that he had still earned around $440,000 in 2009 and $610,000 in 2010. He further admitted having stated in a September 2013 email that he had earned $320,000 in 2012. In contrast, in deposition and at trial, he claimed he had earned nothing in 2012, due to his illness.

{¶ 20} At trial, Marjorie testified that Joel had insurance throughout the marriage, and that insurance paid for his surgeries other than a September 2015 surgery, which

---

[2] In August 2015, Greene County seized 215 guns from Joel's home. *See* Plaintiff's Ex. 3. By the time of trial in July 2016, Greene County had returned some guns and other people (who had been holding other guns) had returned guns as well. Tr.1 at pp. 45-47. Since other people were holding guns, the number could be either significantly higher than or close to the 215 number. In any event, Joel's testimony was clearly evasive and contradictory.

was free, as it was done through the Veterans Administration. She also said that the whole basement was full of guns and that Joel just kept bringing them in during the marriage. Tr.2 at pp. 90-91. In addition, Marjorie said that Joel traded and sold guns during their marriage, and that he had a hundred or more guns when they got married. *Id.* at p. 96.

{¶ 21} In view of these facts, the trial court and magistrate acted well within their discretion in ordering that the gun collection be sold, and that Marjorie receive one-third of the proceeds. Accordingly, Joel's First Assignment of Error is overruled.

### III. Alleged Abuse of Discretion Concerning Credit Card Debt

{¶ 22} Joel's Second Assignment of Error states as follows:

The Trial Court Erred and Abused Its Discretion by Ordering Mr. Montgomery to Pay All Credit Card Debts.

{¶ 23} Under this assignment of error, Joel contends that the trial court abused its discretion by requiring him to pay the credit card debt accumulated after the parties separated in July 2014. Joel argues that, while the parties agreed that Marjorie could use the credit card for "necessaries," she used the card for items that were not necessary, while doing nothing to contribute toward the marriage.

{¶ 24} Like assets, debts are considered property, and orders assigning debt to one party or another are part of the property division. *Arnett v. Arnett*, 2d Dist. Montgomery No. 20332, 2004-Ohio-5274, ¶ 8. "The division decision begins with an equal division, but the court may divide the property unequally if it believes that equality would be inequitable." *Ulliman v. Ulliman*, 2d Dist. Montgomery No. 22560, 2008-Ohio-

3876, ¶ 28, citing R.C. 3105.171(C)(1). Courts have broad discretion on how to divide marital property, which, again, means that we apply an abuse of discretion standard. *Wright v. Cramer*, 2018-Ohio-764, 107 N.E.3d 836, ¶ 11 (2d Dist.).

{¶ 25} In its decision, the magistrate selected February 28, 2015 as the de facto termination date of the marriage because, after the separation, the parties discussed only separating on a trial basis. Joel also helped Marjorie get an apartment, purchased bedroom furniture for her in the amount of $6,800, and gave her a credit card that she used until he removed her as an authorized user in February 2015. Doc. #60 at p.3. Because Joel has not challenged the de facto termination date, the debt on the credit card was acquired during the marriage.

{¶ 26} The magistrate rejected Joel's contention that Marjorie should be responsible for the credit card debt because she overcharged for clothing and other items during the separation. In this regard, the magistrate commented that Joel failed to provide evidence of the purchases. Joel also controlled the money, made all financial decisions, and earned most of the income during the marriage. Furthermore, the magistrate noted that Joel agreed to let Marjorie use the credit card, and her spending was consistent with the lifestyle they established during the marriage. The magistrate therefore concluded, as a matter of equity, that Joel should be responsible for the credit card debt.

{¶ 27} After objections were filed, the trial court agreed with the magistrate, concluding that Joel controlled all the finances and that he was awarded all the marital cash. Doc. #94 at p. 3. This was not precisely correct, since the cash was non-marital.

{¶ 28} Nonetheless, after reviewing the matter, we find no abuse of discretion.

During the marriage, the parties maintained a high standard of living. As noted, Joel made significant amounts of money (although he claimed that he was unemployed after 2011 due to his illness). Despite these claims, the parties' four children were sent to private schools in 2014, and the parties purchased a retirement home in Colombia in 2013, for which they paid cash. Tr.2 at pp. 54-56. During the marriage, they also invested about one million dollars in a mining company in Colombia.[3] In addition, Joel paid cash in the fall of 2012 for a 2012 Honda CRV for Marjorie, and paid $6,800 in 2014 for Marjorie's bedroom furniture after she moved out. Joel also owned two airplanes and a home, which the parties agreed he would retain as separate property. No spousal support was awarded.

{¶ 29} At trial, Joel contended that Marjorie had spent more than what was necessary, because she used the credit card for clothes and things like facials. However, as the magistrate noted, the expenditures were consistent with the lifestyle the parties enjoyed during marriage.

{¶ 30} More importantly, Joel never established the amount of credit card debt. On the afternoon of the second and final day of trial, Joel admitted that he failed to provide Marjorie with discovery she had requested, i.e., statements for credit cards he had since 2012. The trial court had also ordered Joel to comply with discovery requests, but he failed to do so.

{¶ 31} Joel claimed that he chose not to provide the information because it would cost him money ($5.00 per statement) to do so, and he could not afford it. Tr.2 at pp.

---

[3] The parties agreed that the trial court would not consider the Columbia mining company, and that they would deal with it in Colombia. They each owned one-third of the business.

118-119. [4]   During the trial, the magistrate ordered Joel to provide complete documentation concerning a notice of submission of discovery that he had filed on March 7, 2016.   However, Joel also never filed anything in response to that order.   *Id.* at pp. 124-125 and 142.

**{¶ 32}** At the end of the last day of trial, the magistrate let Joel's counsel proffer the exhibits that had not been produced before trial.   This was done out of the magistrate's presence, since the exhibits would not be considered.   *Id.* at p. 142. Among the exhibits was Defendant's Ex. C: "a Chase credit card statement from August of '14 through February '15 in the name of Joel Montgomery [which] was the card that he permitted Mrs. Montgomery to use."   *Id.* at pp.142-143.

**{¶ 33}** Again, Joel failed to disclose these documents before the final day of the divorce hearing, although they were requested as early as August 2015 and the trial court had granted a motion to compel.   Furthermore, the court's pretrial order required the parties to mark and exchange all exhibits at least seven days before the final hearing. *See* Doc. #53, p. 1, filed on May 18, 2016.   The court's order further stated that "[f]ailure to mark and exchange exhibits may result in an exhibit being omitted from trial."   *Id.* Finally, Marjorie did not know the balance on the credit card because she did not have

---

[4] This assertion is odd, given that in April 2016, Joel filed a motion to continue a pretrial because he had a previously scheduled speaking engagement at a conference in Baltimore on April 17-21, 2016, and had been "asked to stay on the following week for contract negotiations and other follow-up from his presentation."   Doc. #46, p.1.   At the time of trial, Joel had bachelor's and master's degrees and was in the process of receiving a Ph.D. in electrical engineering.   Nonetheless, a few months after this speaking engagement, Joel represented during trial that he was not currently employed because he was "in recovery" from surgery that he had in September 2015.   *See* Tr.1 at pp. 10, 20, 22; Tr.2 at pp. 48-49.   Notably, Joel never testified that he had attended this conference and had conducted negotiations without being paid.   Again, his testimony was not credible.

access to any of the financial accounts.   Tr.1 at pp. 64 and 79.

**{¶ 34}** Debts "incurred during the marriage are rebuttably presumed to be marital debts."   *Passyalia v. Moneir*, 2017-Ohio-7033, 95 N.E.3d 723, ¶ 19 (5th Dist.). Consequently, the party who seeks to have debts classified as a separate liability must show "by a preponderance of the evidence, that such debt was the separate obligation of the other spouse."   *Brady v. Brady*, 11th Dist. Portage No. 2007-P-0059, 2008-Ohio-1657, ¶ 38.   *See also Paterchak v. Paterchak*, 2d Dist. Montgomery No. 25383, 2013-Ohio-3043, ¶ 19 (rejecting party's argument about allocation of debt because he failed to provide documentation to substantiate his claims).   Under any standard of proof, Joel failed to provide evidence of the amount of the credit card debt, and he did not prove that requiring him to pay this debt was inequitable.

**{¶ 35}** Accordingly, the Second Assignment of Error is overruled.

### IV.   Alleged Error as to Cash as a Non-Marital Asset

**{¶ 36}** As noted, Marjorie filed a cross-appeal.   Her First Cross-Assignment of Error states that:

> The Trial Court Erred and Abused Its Discretion in Ordering that the $88,000 Cash Was a Non-Marital Asset.

**{¶ 37}** According to Marjorie, the magistrate's assessment of Joel's credibility about his gun collection should also have been extended to the $88,000 in cash that the Greene County Task Force confiscated and then returned to Joel around August 2015. As support, Marjorie points out many instances during Joel's deposition where he claimed that he could not remember who loaned him the money or when he received the loans.

She also notes Joel's failure to submit any tangible evidence at trial. Marjorie therefore contends that she should have been awarded one-half of the money.

**{¶ 38}** Joel testified at trial that the $88,000 in cash was not marital property, but had been loaned to him for surgery that he ultimately received in September 2015. During his deposition, Joel displayed a remarkable inability to recall information about these loans, including who made them, the amounts, or exactly when they were made. At trial, however, he claimed he had "absolute knowledge" of these matters. Tr.1 at p. 39. This knowledge was based on what other people told him after his deposition. *Id.* at p. 42.

**{¶ 39}** According to the evidence that was not disputed (or at the least not completely questionable due to the source), Joel was diagnosed with cancer in 2009, and had his first cancer surgery in the fall of 2009. Tr.2 at p. 135. He had further surgery in April 2010 and again in December 2011, shortly after the parties' marriage. *Id.* at p. 136. These initial surgeries were covered by insurance. He did not, thereafter, have surgery until September 2015. This was not cancer surgery, but corrected prior hernia surgery. Tr.2 at pp. 85-86. The surgery was initially scheduled for February 2015, but did not occur because Joel found out that his insurance had been cancelled. The surgery was then rescheduled for March 1, 2015, but Joel found out on February 28, 2015, that the hospital would not perform surgery without receiving cash up-front. *Id.* at pp. 86-87. The cost was $140,000, which the hospital said it would reduce by 40%. However, Joel was required to pay part of that upon admission, and also to show that he had the rest of the money. *Id.*

**{¶ 40}** Joel's account was that he contacted friends and family and accumulated

$88,000 in cash from these sources to pay for his operation. When the Task Force raided his house, they took this cash, which was kept in a can. Joel claimed that promissory notes (or IOUs) had also been placed in the can, and that this was why the money was returned to him in July or August 2015. Joel further testified that when he received medical coverage through the VA, he repaid the people who had loaned him the money, and the notes were destroyed.

{¶ 41} Given Joel's lack of credibility, lack of documentation, and convenient inability to remember anything during his deposition, the trial court could have concluded that he was not telling the truth. There was also evidence that during the marriage, very large amounts of cash were kept at the house. Joel himself admitted to keeping $5,000 to $10,000 in cash for emergencies, although he denied keeping more than that. Marjorie testified that hundreds of thousands of dollars were kept in the house, and a neighbor (who lent Joel $10,000 in cash for the surgery) testified that Joel had instructed him at some point to get $25,000 from a can in the house. This money was used to bail Joel out after he was arrested for domestic violence.

{¶ 42} Joel did present two witnesses to corroborate his testimony, but their testimony was not supported by any documentation. Joel's daughter testified that he had borrowed the money, and Joel's close friend agreed that he had loaned Joel $10,000 in cash for the surgery.

{¶ 43} The magistrate concluded that, despite Joel's overall lack of credibility, Joel did present corroborating evidence regarding the loans. Moreover, Marjorie was aware that Joel was borrowing money for his surgery in case the VA were not going to cover it. As a result, the magistrate found that Marjorie failed to establish that the money was

earned before the de facto termination date of the marriage. As noted, that date was February 28, 2015. In addition, the magistrate concluded that even if the cash were a marital asset, equity required no distribution to Marjorie in light of the large amount of debt Joel incurred after the separation. In overruling Marjorie's objections to the magistrate's decision, the trial court agreed that the cash was not a marital asset.

{¶ 44} While we might have made a different decision due to Joel's overall lack of credibility, we cannot find an abuse of discretion in the trial court's decision to classify the cash as non-marital. As the court observed in *AAAA Enterprises*:

> A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.

*AAAA Ents.*, 50 Ohio St.3d at 161, 553 N.E.2d 597.

{¶ 45} First of all, the cash did not surface until well after the de facto date of termination. Therefore, no presumption arose that it was marital property. Furthermore, Marjorie testified that Joel had said another surgery was recommended and that he was applying to the VA because he would not be able to pay for the surgery. Tr.1 at p. 72. She also testified that Joel was "worried that he might not get the VA benefits to pay for his surgery," and that he had mentioned that he was going to borrow money to try and get the surgery. *Id.* Because this testimony corroborates Joel's claims, the trial court did not abuse its discretion in finding that the cash was not a marital asset.

{¶ 46} Based on the preceding discussion, Marjorie's First Cross-Assignment of

Error is overruled.

## V. Alleged Error as to Distribution of Gun Collection

{¶ 47} Marjorie's Second Cross-Assignment of Error states that:

The Trial Court Erred in Not Awarding the Appellee/Cross-Appellant One-Half Interest in the Parties' Gun Collection.

{¶ 48} Under this assignment of error, Marjorie contends that the trial court should have awarded her one-half of the gun collection rather than one-third. While Marjorie agrees with the court's decision to have the guns inventoried and sold, she argues that she should receive an equal part of the proceeds due to the many inconsistencies and lack of recollection in Joel's testimony.

{¶ 49} In overruling Marjorie's objection to receiving one-third, rather than one-half of the gun proceeds, the trial court commented that the distribution was fair, given the fairly short length of the marriage. Doc. #94 at p. 3. Based on our prior discussion of the gun issue, we agree that a one-third share was equitable. Accordingly, the Second Cross-Assignment of Error is overruled.

## VI. Conclusion

{¶ 50} All of the assignments of error and all of the cross-assignments of error having been overruled, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Ronald P. Keller
Tom O. Merritt
Hon. Steven L. Hurley