[Cite as *Ehrmantrout v. Ehrmantrout*, 2024-Ohio-1328.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BRIAN EHRMANTROUT | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. Craig R. Baldwin, J.<br>Hon. Andrew J. King, J. |
| Plaintiff-Appellee | |
| -vs- | Case No. 2023 AP 03 0021 |
| KATE EHRMANTROUT | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:      Appeal from the Tuscarawas County Court
of Common Pleas, Domestic Relations
Division, Case No. 2021 TC 09 0295


JUDGMENT:      Affirmed in part; Reversed in part; and
Remanded


DATE OF JUDGMENT ENTRY:      April 5, 2024


APPEARANCES:


For Plaintiff-Appellee                    For Defendant-Appellant

DAVID C. HIPP                             DAN GUINN
P.O. Box 90                               232 W. Third Street
New Philadelphia, Ohio 44663             Dover, Ohio 44622

*Hoffman, P.J.*

**{¶1}**   Defendant-appellant Kate E. Ehrmantrout ("Wife") appeals the March 3, 2023 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Domestic Relations Division, which granted Wife and plaintiff-appellee Brian V. Ehrmantrout ("Husband") a divorce, divided the parties' marital debts and assets, and allocated their parental rights and responsibilities.

STATEMENT OF THE FACTS AND CASE

**{¶2}**   Husband and Wife were married on August 29, 2009, in Wooster, Ohio. The parties have three (3) minor children, one of whom was born prior to the marriage. Paternity was established by birth certificate.  The other two (2) children were born during the marriage. The parties separated in September, 2018.

**{¶3}**   On September 17, 2021, Husband filed a Complaint for Divorce. Wife filed a pro se Answer on October 21, 2021.[1]  Via Magistrate's Order filed October 25, 2021, the magistrate named Wife the temporary residential parent and legal custodian of the children, granted Husband standard parenting time, ordered the parties to file proposed child support calculations, and, in lieu of temporary spousal support, ordered Husband to pay all outstanding medical bills of the parties and make the monthly payments on the Bank of America credit card.  After the child support computation worksheet was filed, the magistrate ordered Husband to pay child support in accordance with the worksheet.

**{¶4}**   The parties engaged in mediation, but were unable to reach an agreement. On July 13, 2022, after learning about an incident of domestic violence between Wife and her paramour, Husband filed a motion requesting the appointment of a guardian ad litem

---

[1] Attorney Dan Guinn filed a Note of Appearance on behalf of Wife on January 13, 2022.

("GAL") for the children on July 13, 2022. The trial court appointed Attorney Monica DeRamus as GAL for the children. Husband was ordered to pay the initial deposit of $1,500.00, to the GAL.

{¶5} The trial court conducted a final hearing on October 13, 2022.

{¶6} Husband began his case-in-chief by calling Wife on cross-examination. Wife testified she is employed with Farmers National Bank as a bank teller and earns $13.95/hour. Wife resides with the children in a home owned by her parents. With respect to the Bank of America credit card, Wife indicated the account was in her name only and the account was currently over the credit limit of $16,000. Wife stated the Bank of America credit card was opened around 2013, when the parties resided in Florida. Wife acknowledged she continued to use the Bank of America credit card after the parties separated, but could not provide an estimate of how much of the $16,000 debt was incurred after the separation. Wife explained she used the Bank of America credit card for daily living expenses for herself and the children, including using it to pay bills and to purchase clothing.

{¶7} With respect to the parties' other credit cards, Wife testified the balance on the Capital One Walmart credit card was approximately $4200.00, the balance on the Bell credit card was $45.00, and the balance on the Discover Card was approximately $9,730.00. Wife continued to use the Capital One Walmart credit card, the Bell credit card, and the Discover Card after the parties' separation. Other than a Kohl's credit card, which was opened in 2011, Wife indicated all of the credit cards were opened when the parties lived in Florida and were in her name only.

**{¶8}** Wife testified she had been dating an individual by the name of Christopher Durachinski, but stopped seeing him after he was arrested in February, 2022, "[b]ecause he was violent towards me." Transcript of Oct. 13, 2022 Proceedings at p. 10. Wife obtained a civil protection order ("CPO") after the incident. Wife was subpoenaed to appear at Durachinski's trial on the charges, but refused to appear to testify against him, explaining, "I did not appear, but I got a CPO and after I got the CPO I told victim assistance that I couldn't handle it anymore, it was emotionally draining. So, I got what I needed to get, and I left it at that." *Id.* at p. 11. When asked if her children were present during the incident, Wife stated they were upstairs. Wife initially could not recall if there were other instances of physical confrontations with Durachinski, but then replied, "Physically no, maybe words." *Id.* Wife stated she and Durachinski were in a relationship less than a year.

**{¶9}** Wife was asked about the parties' joint bank account with Bank of America. Counsel for Husband introduced Plaintiff's Exhibit A, which was a Bank of America bank statement. The statement showed the following transfers from the account to Durachinski: August 31, 2021, for $999.98; August 31, 2021, for $1,300.00; September 1, 2021, for $700.00; and September 2, 2021, for $1,500.00. Wife stated she did not owe any money to Durachinski. Wife could not recall if the money was from the parties' joint tax refund. Wife stated she "[m]ost definitely" made the transfers to Durachinski. *Id.* at p. 14. Wife explained she transferred the money to Durachinski so she could open her own separate account. Wife added Husband also was taking money out of the Bank of America account, and, as a result, the account fell below the required minimum and was assessed monthly maintenance fees, which she paid. Wife could not recall if Husband

had his paychecks deposited into the Bank of America account after the parties' separation. Wife indicated she deposited the Federal stimulus checks issued to herself, Husband, and the children into the joint bank account, but did not know if Husband withdrew any of those funds.

{¶10} Husband testified he was employed full-time as a line operator for ProVia, and earns $17.50/hour. Husband maintains health insurance for himself and the children through his employer. With respect to the children, Husband stated he sees the two older children on a regular schedule. However, Husband noted his parenting time with the parties' youngest child, who has cerebral palsy and is also epileptic, was irregular. Husband indicated the youngest child has significant needs, but he was able to meet all of her needs and provide appropriate care. Husband detailed his parenting time with the children and discussed the activities in which the older two children are involved. Husband testified the older two children told him about the domestic violence between Wife and Durachinski and Durachinski's arrest. The two older children were present during the altercation. Husband contacted Wayne County Sheriff's Office, which conducted a welfare check. Husband recalled, when he spoke to Wife that evening, her speech was slurred and she was under the influence of alcohol. Husband stated Wife had an on-going problem with alcohol.

{¶11} With respect to the Bank of America bank account, Husband testified while the parties were still together his paycheck, Wife's paycheck, and the youngest child's social security disability check were deposited into the account. Husband noted his paycheck continued to be deposited into the Bank of America bank account for a period of time after the parties separated. Husband stated the last time he used the bank

account on a regular basis was in 2019.  When Husband asked Wife about the multiple transfers to Durachinski, Wife told him she was afraid he (Husband) would take the money.  Husband withdrew $200.00, at some point, which drained the account.  Husband indicated Wife wrote him a check for the federal stimulus checks issued to him.  With respect to the credit cards, Husband indicated he did not use any of the credit cards after the parties' separation in 2018.

{¶12} On cross-examination, Husband stated he worked at Pepsi Beverage Company until October, 2021, and was earning approximately $19.75/hour.  Husband acknowledged although he was ordered to pay the Bank of America credit card, he only made two payments on the account.  Husband testified he has been consistent in paying with his child support obligation.

{¶13} On direct, Wife indicated she would like to be restored to her former name of "Jones."  Wife explained she and Husband do not own any real property and they had previously divided their personal property.  Wife wished to keep the Bank of America bank account and a Farmers National Bank account, both of which were in her name only. The parties have joint checking and joint savings accounts with Bank of America.  The joint savings account was charged a monthly maintenance fee which, according to Wife, began after Husband withdrew $200.00, and brought the account below the required balance.  Wife did not have a retirement account.  Husband had a retirement account through his former employer, Pepsi Beverage Company.  Wife believed she was entitled to a portion of any current 401(k) Husband might have.  Wife wanted Husband to pay the balances on the Bank of America credit card and the Discover Card, as well as the outstanding medical bills.

**{¶14}** Wife was unable to work full-time due to the needs of the parties' youngest child. Wife expressed her desire to be named the legal custodian and residential parent of the parties' children. Wife did not feel comfortable with the youngest child being at Husband's residence multiple nights in a row, adding "[e]very time [the child] is over there something happens." *Id.* at p. 58. Wife discussed the older two children, their extra-curricular activities, and their individual educational needs. Wife made clear she paid for all of the children's extra-curricular activities. Wife detailed the daily care she provides to the youngest child, which includes tube feeding the child five times per day and giving her numerous prescription medications each day. Wife asserted Husband did not attend medical or school appointments even though she advised him of the same.

**{¶15}** With respect to the money transferred to Durachinski, Wife explained she transferred the money to him in order to open a bank account in her name only. Wife also claimed Husband was attempting to blackmail her into signing a dissolution, which she did not believe was equitable, and she believed he would withdraw the money from the joint account. Wife indicated Durachinski transferred the money back to her and she used it to pay bills. Wife adamantly denied the money went to Durachinski.

**{¶16}** On cross-examination, Wife admitted she was charged with DUI in January, 2020. Wife also admitted she filed a tax return, claiming all three children, despite a court order prohibiting her from doing so. Wife received a tax refund of $15,000.00, which she used for rent, gas, car repairs, extra-curricular activities, and the revolving balances on the credit cards.

**{¶17}** At the close of evidence, the trial court advised the parties they could submit Proposed Findings of Fact and Conclusions of Law, if desired. The parties requested the

trial court conduct an in-camera interview with the two older children in the presence of the GAL. The interview was scheduled for November 15, 2022.

**{¶18}** Wife filed Proposed Findings of Fact, Conclusions of Law on November 7, 2022. Husband filed his Final Argument as well as his Proposed Judgment Entry on November 14, 2022. Wife filed a response to Husband's Final Argument on December 30, 2022. On January 12, 2023, the GAL filed a Guardian ad Litem's Notice of Filing Final Bill, showing an outstanding balance of $352.50, and noting each party was responsible for $176.25. Via Judgment/Entry filed the same day, the parties were ordered to pay the GAL fees as follows: Husband - $176.25; and Wife - $176.25.

**{¶19}** Via Judgment Entry filed March 3, 2023, the trial court granted the parties a divorce on the grounds of incompatibility and living separate and apart for more than one (1) year. The trial court ordered Husband to make all monthly payments on the Bank of America credit card he had been previously ordered to make, and Wife be responsible for the remaining balance. With respect to the parties' additional revolving credit cards/accounts, the trial court held the parties responsible for their respective debt. The trial court found an award of spousal support was not appropriate as Wife engaged in "secretive and prejudicial financial misconduct." March 3, 2023 Judgment Entry at p. 8. The trial court ordered the parties to pay the GAL expenses 65% Husband/35% Wife. The trial court ordered Husband's pension benefits from ProVia be divided by QDRO, and ordered Wife to pay for an evaluation and preparation of the QDRO. The trial court named Mother the legal custodian and residential parent of the parties' youngest child, and Husband the legal custodian and residential parent of the two older children. The trial court did not award child support, but ordered the parties' split the cost of the children's

activities 65% Husband/35% Wife.  The trial court divided court costs equally between Husband and Wife.

{¶20} It is from this judgment entry Wife appeals, raising the following assignments of error:

I. THE COURT ERRED WITH REGARDS TO THE ALLOCATION OF THE BANK OF AMERICA CREDIT CARD DEBT.

II. THE COURT ERRED WITH REGARDS [TO] THE ALLOCATION OF DEBTS OTHER THAN THE BANK OF AMERICA CREDIT CARD.

III. THE COURT ERRED IN DETERMINING THAT THE APPELLANT COMMITTED FINANCIAL MISCONDUCT.

IV. THE COURT ERRED IN NOT RESTORING THE APPELLANT TO HER FORMER NAME.

V. THE COURT ERRED IN DETERMINING THAT THE PARTIES SHOULD SPLIT THE GUARDIAN AD LITEM FEES.

VI. THE COURT ERRED IN ORDERING THE APPELLANT TO PAY THE ENTIRE COST ASSOCIATED WITH THE PREPARATION OF THE QDRO TO DIVIDE THE MARITAL PORTION OF THE APPELLEE'S PENSION

VII. THE COURT ERRED IN ORDERING BOTH PARTIES TO PAY THE COURT COSTS EQUALLY.

I

{¶21}  In her first assignment of error, Wife submits the trial court erred and abused its discretion in allocating the entire Bank of America credit card to her.

{¶22}  R.C. 3105.171 (B) provides:

In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property, excluding the social security benefits of a spouse other than as set forth in division (F)(9) of this section, in which one or both spouses have an interest.  R.C. 3105.171(B).

{¶23}  "Although the allocation of debt is not specifically addressed by the statute, the division of property also includes marital debt." *Yousef v. Iskander*, 9th Dist. Summit No. 29703, 2021-Ohio-3322, ¶ 6. (Citations omitted);   See, also, *Montgomery v. Montgomery*, 2d Dist. Greene No. 2018-CA-16, 2019-Ohio-1803, ¶ 24 (Debts, like assets, are considered property.). Consequently, orders assigning debt to one party or another are part of the property division. *Montgomery v. Montgomery*, supra; *Kraft v. Kraft*, 2d Dist. Montgomery No. 25982, 2014-Ohio-4852, ¶ 41 ("Since the court, pursuant to R.C. 3105.171(F)(2), must consider both the parties' assets and liabilities, 'an equitable division of marital property necessarily implicates an equitable division of marital debt.' ").

**{¶24}** "A trial court's allocation of marital debt will not be reversed absent an abuse of discretion." *Vaughn v. Vaughn*, 12th Dist. Warren No. CA2007-02-021, 2007-Ohio-6569, ¶ 41. "We may modify or reverse the court's decision only for abuse of discretion." *Hornbeck v. Hornbeck*, 2019-Ohio-2035, 136 N.E.3d 966, ¶ 13, citing *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982).  An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶25}** Specifically, Wife contends the trial court's finding "most of the $16,000.00 balance for [the Bank of America credit card] this was incurred by the Wife after the separation" was erroneous.  Brief of Appellant at p. 20.  Wife continues:

> The problem is that the evidence did not show that. No evidence or testimony was shown which proved what the balance for this was prior to the parties' separation. Moreover, no evidence was shown with regards to what balance the Wife charged on the credit card. Thus, there was no way for the Court to determine this and it abused its discretion in making that finding in Paragraph 14.[2]
>
> *Id*.

---

[2] Paragraph 14 provides: "The parties also have a Bank of America credit card in both their names when they lived together in Florida which has a balance of over $16,000 at the time of trial. Mother acknowledges that this sum arose mostly from charges she made for the home and the children's needs after the parties separated." March 3, 2023 Judgment Entry.

{¶26} Wife further argues the trial court abused its discretion in failing to allocate all of the Bank of America credit card debt to Husband or, alternatively, divide the debt proportionately to what each party earns, i.e., 65% to Husband, 35% to Wife.

{¶27} The record before this Court reveals the balance on the Bank of America credit card was over $16,000.00, on October 25, 2021, when part of its temporary orders, the magistrate ordered Husband to make monthly payments on the credit card. Neither Husband nor Wife presented any testimony or evidence establishing the balance of the credit card at the time the parties separated in September, 2018. At the time of the final hearing, the balance remained over $16,000.00. Wife testified she used the credit card for daily living expenses. Wife did not provide any documentation to establish the amount she charged during the period between the magistrate's October 25, 2021 order and the final hearing. Husband admitted he only made two monthly payments, and, the trial court, in its March 3, 2023 Judgment Entry, ordered Husband to pay all of the monthly payments he failed to make.

{¶28} Because Wife had exclusive use of the Bank of America credit card following the parties' separation in 2018, and in the absence of any testimony or evidence establishing the balance of the credit card at the time the parties separated in September, 2018, we find the trial court did not abuse its discretion in allocating the remainder of the Bank of America credit card debt after Husband pays the amounts he was order to pay under the magistrate's temporary orders.

{¶29} Wife's first assignment of error is overruled.

II

**{¶30}** In her second assignment of error, Wife argues the trial court erred in its allocation of the other credit card debt.

**{¶31}** In its March 3, 2023 Judgment Entry, the trial court made the following findings:

Findings of Fact 10-"These parties have incurred substantial marital debt from the beginning to this day including since the parties' separation."

Findings of Fact 16-"The parties have other credit cards and consumer debt including Capital One, Walmart, Bell's, and a Discover Card."

Findings of Fact 17-"Both parties have played a role in creating their oppressive debt."

**{¶32}** Based upon these findings, the trial court ordered:

Decision and Orders Paragraph 4-"Each Party shall pay and hold the other Party harmless on any other revolving credit cards/accounts including Capital One, Walmart, Bell's and a Discover Card."

**{¶33}** Wife points out two problems with the trial court's order. First, Wife submits, because the balances on the credit cards are marital debt, such debt "should, at the very least, be divided equally between the parties." Brief of Appellant at p. 21. Wife explains,

although the trial court ordered each party pay and hold the other party harmless, the order is unclear as to "who is to pay what debt." *Id*. We agree with Wife as to the ambiguity of the trial court's order. We find the trial court erred in failing to specify which party was responsible for which credit card debt and in what amount.

**{¶34}** Next, Wife states the trial court's order is not supported by the evidence. As stated, supra, the trial court found the parties' "credit cards and consumer debt [included] Capital One, Walmart, Bell's, and a Discover Card." March 3, 2023 Judgment Entry, Finding of Fact 16. Wife explains, and the evidence presented at the final hearing established, the parties had a Capital One Walmart credit card, not separate Capital One and Walmart credit cards.

**{¶35}** Based upon the foregoing, we reverse the trial court's allocation of the remaining credit card debt and remand the matter to the trial court to clarify the order.

**{¶36}** Wife's second assignment of error is sustained.

III

**{¶37}** In her third assignment of error, Wife submits the trial court erred in finding she had engaged in financial misconduct.

**{¶38}** "An appellate court employs the manifest-weight-of-the-evidence standard when reviewing a trial court's determination that a party engaged in financial misconduct." *Bobie v. Bobie*, 12th Dist. Butler No. CA2022-12-119, 2023-Ohio-3293, ¶ 78, citing *Robinson v. Robinson*, 12th Dist. Warren No. CA2012-11-118, 2013-Ohio-4435, ¶ 14. The reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact "clearly lost its way and created such a manifest miscarriage of justice that

the [judgment] must be reversed and a new trial ordered." *Smith v. Smith*, 12th Dist. Clermont No. CA2016-08-059, 2017-Ohio-7463, ¶ 10.

**{¶39}** R.C. 3105.171(E)(4) provides:

> If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.
>
> R.C. 3105.171(E)(4).

**{¶40}** "The financial misconduct statute should apply only if the spouse engaged in some type of wrongdoing (i.e., wrongful scienter)." *Feldmiller v. Feldmiller*, 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 18 (Citation and internal quotations omitted). "Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets. * * * Financial misconduct involves some element of profit or interference with another's property rights." *Id.* (Citations and internal quotations omitted.) "The court does not have to find malicious intent; it need only find that a spouse has engaged in knowing wrongdoing." *Hornbeck v. Hornbeck*, 2019-Ohio-2035, 136 N.E.3d 966, ¶ 81, (Citation and internal quotations omitted).

**{¶41}** The testimony at the final hearing established, and the trial court found, Wife kept the entire amount of the parties' joint 2020 tax return.[3]  In addition, Wife admitted

---

[3] In her Brief to this Court, Wife states "the tax refund was not $11,000.00 as the Court found but much less based upon the Husband's testimony" Brief of Appellant at p. 25.  Husband testified the 2020 tax refund was approximately $5,600.00.  Tr. at p. 34.  We find the trial court incorrectly noted the amount of the tax refund, but such does not change the fact Wife kept the entire refund.

she transferred $4,499.99, from the parties' joint checking account to Durachinski. The transfers to Durachinski occurred a few months after the 2020 tax refund was directly deposited into the parties' Bank of America account.

**{¶42}** The testimony also established Wife filed a separate tax return in 2022, claiming all three children as dependents, despite a court order prohibiting her from doing so. Wife received a tax refund of $15,000.00, which she testified she used for rent, gas, car repairs, fees for the children's extra-curricular activities, and payments on the credit card balances.

**{¶43}** The trial court's determination Wife engaged in financial misconduct was based, in part, on the fact Wife "kept 100% of both Federal Stimulus checks without sharing with [Husband] or paying on some of her credit card debt." March 3, 2023 Judgment Entry, Finding of Fact #20. We find this finding is not supported by the testimony presented at the final hearing. Husband testified Wife wrote him a check for his share of each of the federal stimulus checks. Nonetheless, even without this erroneous finding, we find the trial court's finding Wife engaged in financial misconduct was not against the manifest weight of the evidence.

**{¶44}** As the result of Wife's financial misconduct, the trial court chose not to make an award of spousal support.

**{¶45}** A trial court has broad discretion in determining whether an award of spousal support is proper based on the facts and circumstances of each case. *Wojanowski v. Wojanowski*, 8th Dist. Cuyahoga No. 99751, 2014-Ohio-697, ¶ 43, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). As stated, supra, an abuse

of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore*, supra.

**{¶46}** Upon review of the entire record in this matter, we find the trial court did not abuse its discretion in failing to award spousal support.

IV

**{¶47}** In her fourth assignment of error, Wife contends the trial court erred in failing to restore her to her former name.

**{¶48}** Pursuant to R.C. 3105.16, "[w]hen a divorce is granted the court of common pleas shall, if the person so desires, restore any name that the person had before the marriage." Use of the word "shall" demonstrates that this duty is mandatory. *Brown v. Brown,* 12th Dist. Madison No. CA2008-08-021, 2009-Ohio-2204, ¶ 82.

**{¶49}** At the final hearing in this matter, Wife testified she wished to be restored to her former name. Tr. at P. 45. The judgment entry is silent on this issue. In light of Wife's request and pursuant to R.C. 3105.16, we find the trial was required to restore Wife to her former name and the trial court erred in failing to do so. See, *Havrilla v. Havrilla*, 9th Dist. Summit No. 27064, 2014-Ohio-2747, ¶ 6.

**{¶50}** Wife's fourth assignment of error is well-taken and sustained.

V

**{¶51}** In her fifth assignment of error, Wife asserts the trial court erred in ordering the parties split the GAL expenses.

**{¶52}** Civil Rule 75(B)(2) provides, "* * * the court may * * * appoint a guardian ad litem and legal counsel, if necessary, for the child and tax the costs." The trial court has discretion over the amount of GAL fees, as well as the allocation to either or both of the

parties. *Karales v. Karales*, 10th Dist. Franklin No. 05AP-856, 2006-Ohio-2963, 2006 WL 1629005. We review a trial court's ruling relative to an award of GAL fees under an abuse of discretion standard. *Jourdan v. Jourdan,* 5th Dist. Perry No. 22-CA-00004, 2023-Ohio-1826, 216 N.E.3d 42, ¶ 90 (Citation omitted). An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶53}** Fees may be allocated based on the parties' litigation success and economic status. *Davis v. Davis* (1988), 55 Ohio App.3d 196, 200, 563 N.E.2d 320 (Citations omitted). Moreover, it is proper to allocate GAL fees based on which party caused the work of the GAL. *Jarvis v. Witter,* Cuyahoga App. No. 84128, 2004–Ohio–6628, at ¶ 100, overruled on other grounds, *Siebert v. Tavarez,* Cuyahoga App. No. 88310, 2007–Ohio–2643.

**{¶54}** Wife maintains Husband should be responsible for all of the GAL fees as he requested the appointment of the GAL.  Wife adds Husband "could have, and should have, made this request [sooner] since this case had been pending nearly a year when he decided to file this motion," but "for some unknown reason the Husband decided to wait until the eve of the final hearing to make this request."  Brief of Appellant at p. 27. We find Husband's decision to wait "until the eve of the final hearing" to request a GAL was not a delay tactic, but the result of newly obtained information.

**{¶55}** Husband filed a Motion for Court Interview of Minor Children and Appointment of Guardian ad Litem on July 13, 2022, after he learned about an incident of domestic violence involving Wife and Durachinski.  In his affidavit in support of his

motion, Father averred, inter alia, there had been instances of violence in Wife's home, which occurred while the children were present, and, as a result of an incident which occurred in February, 2022, Durachinski was charged with domestic violence. Father further averred the two older children reported these occurrences to him and also disclosed being subject to physical abuse themselves.

{¶56} As the need for a GAL arose due to instances of violence in Wife's home, about which Husband had only recently learned when he requested the appointment of the GAL, we find the trial court did not abuse its discretion in ordering Wife to pay a percentage of the GAL fees.

{¶57} Mother's fifth assignment of error is overruled.

VI

{¶58} In her sixth assignment of error, Wife maintains the trial court erred in ordering her to pay the entire cost of the preparation of the QDRO.

{¶59} The trial court ordered Husband's pension benefits through ProVia be divided by QDRO with the marital portion, defined as his date of employment to the date of this Judgment Entry, awarded to Wife. The trial court ordered Wife pay for an evaluation and preparation of the QDRO, as needed.

{¶60} Wife submits, and we agree, Husband's pension is marital property and should be divided equally. Wife argues the trial court "had no valid justification for making this order [she pay for all of the costs associated with the preparation of the QDRO] nor did it state its rational in doing so." Brief of Appellant at p. 28. In his Brief, Husband states, "there was no evidence presented that the Husband had any pension benefit plan at ProVia based upon his barely one year's employment," noting, "[i]f there were any such

pension benefits they would certainly be less than the cost of the evaluation and preparation of a QDRO." Brief of Appellee at p. 12. Husband concludes the trial court's order "seems to be meaningless." *Id.*

**{¶61}** Upon review of the transcript of the final hearing, we find no evidence to establish Husband has pension benefits with ProVia. Although Wife testified she was entitled to the marital portion of Husband's retirement, whatever it may be, she had no knowledge of whether such benefit existed. While we do not find the trial court's order "meaningless," as Husband suggests, we, nonetheless, find the trial court did not abuse its discretion in ordering Wife to pay for an evaluation and preparation of the QDRO, should Wife determine her marital portion of Husband's pension, if it exists, exceeds the cost of the preparation of the QDRO.[4]

**{¶62}** Wife's sixth assignment of error is overruled.

VII

**{¶63}** In her final assignment of error, Wife argues the trial court erred in ordering court costs be assessed equally.

**{¶64}** Absent an abuse of discretion, a trial court's decision regarding costs will not be reversed. *Ryan v. Ryan,* 7th Dist. No. 07–BE–48, 2008–Ohio–6358, ¶ 36. As noted above, "[a]n abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *In re P.B.*, 2021-Ohio-414 at ¶ 14, citing *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140.

---

[4] We further note the trial court did not order Wife to reimburse Husband any portion of the original deposit of $1,500.00 for the GAL, which Husband paid. Such might well account for allocation of the cost for the evaluation and preparation of the QDRO to Wife.

**{¶65}** Wife explains the trial court ordered the parties to pay "various expenses in proportion to their incomes." Brief of Appellant at p. 30. Wife continues, although she requested Husband pay all of the court costs, the trial court ordered the parties to pay the court costs in equal shares. Wife suggests "at the very least these should be split in proportion to their incomes" and "[t]here is no reason why there should be a difference when it comes to these costs and other expenses listed." *Id.*

**{¶66}** Wife does not cite any caselaw to support this assertion. Further, Wife has failed to show how the trial court ordering the parties to pay court costs in equal shares was unreasonable, arbitrary, or unconscionable. Accordingly, we find no abuse of discretion.

**{¶67}** Wife's seventh assignment of error is overruled.

**{¶68}** The judgment of the Tuscarawas County Court of Common Pleas, Domestic Relations Division, is affirmed, in part, and reversed, in part, and remanded to the trial court to clarify its order relative to the parties' credit card debt, except for the Bank of America credit card, and we remand this matter to the trial court to modify the judgment to restore Wife to her former name of Kate Elizabeth Jones.

By: Hoffman, P.J.
Baldwin, J. and
King, J. concur